# Maguire *v.* Board of Revenue and Road Commissioners of Mobile County.

*Petition to have set aside and vacated an Assessment of Shares in National Bank for Taxation.*

1. *National banks; power to tax shares in for State purposes.*—National banks being the creatures of Congress, and the right of the States to tax anything pertaining to them being wholly derived from the grant made by Congress, the power to tax shares in such banks for State purposes must be accepted with all the conditions and reservations annexed to its exercise.

2. *Taxation of shares in national banks; rulings of Supreme Court of*

26

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

*United States conclusive on State courts.*—The Supreme Court of the United States has the reserved power of revising, and if need be, of reversing the rulings of the State courts bearing on the exercise by the States of the power to tax shares in national banks; and hence, the decisions of that court on that subject must be adopted and followed by State courts.

3. *Discrimination as to power of the States to tax capital stock of national banks, and shares therein.*—Touching the power conferred by Congress on the States to tax, that body has carefully discriminated between the capital stock of national banks, and the shares in such capital stock; the power to tax the former being withheld from the States, while the power to tax the latter is granted, with stated conditions and reservations.

4. *Taxation of shares in national banks in this State prior to act of December 8th, 1880, not authorized.*—Prior to the passage of the act of December 8th, 1880 (Pamph. Acts, 1880–1, p. 7), there was no statute in this State which authorized the assessment of shares in national banks for taxes.

5. *Taxation of shares in national banks; act of December 8th, 1880, not violative of act of Congress.*—The act of December 8th, 1880, providing "that there shall be levied and collected on the value of each share of every national banking association located within this State, whether held by residents or non-residents, the same rate of taxation as is levied on other moneyed capital, the same to be levied and collected in the county where each such association is located, and not elsewhere, and to be paid by each such association for the shareholders thereof," is not rendered violative of the restrictions placed by the act of Congress on the power of the States to tax shares in such associations, by reason of subdivision 8 of section 362 of the Code of 1876, which provides only for the taxation of the excess of "all money loaned and solvent credits or credits of value," after deducting the tax-payer's indebtedness; but the language of the act, construed in connection with the above provision of the Code, allows and authorizes a deduction by the shareholder of his debts from the value of the shares owned by him, because the privilege of such deduction is allowed in the taxation of money loaned, and solvent credits or credits of value.

6. *Same.*—Nor is the provision of the act of December 8th, 1880, requiring the taxes on such shares to be paid by the bank for the shareholders, violative of the act of Congress.

7. *Same; not affected by subd. 10 of section 362 of Code.*—Subdivision 10 of section 362 of the Code, which declares that the capital stock of domestic corporations, except such portion thereof as may be invested in, and otherwise taxed as, property, shall be subject to taxation, having no reference to the taxation of shares in the capital stock of such corporations, is not violative of the act of Congress restricting the power of the States to tax shares in national banks, as an unfriendly discrimination against such shares; nor is an assessment of such shares under the act of December 8th, 1880, thereby rendered invalid, because, in making the assessment, no deduction was allowed the shareholders for or on account of taxes paid by the bank on real estate or other property owned by it, and assessed for taxation.

8. *Same; 2nd section of act of December 8th, 1880, unconstitutional.* No legislative attempt having been made prior to the passage of the act of December 8th, 1880, to tax the shares of national banking associations, the second section of that act, providing that "there shall be assessed and collected in any county where such association is located, upon each share of the capital stock of such association which has escaped taxation for any preceding year since 1874, the same rate of taxation, State and county, as was in each year assessed and collected upon other moneyed capital," is violative of sections 4 and 5 of article xi of

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

the constitution, limiting the rate of taxation in any one year for State and county purposes.

9. *Distinction between levy and assessment of taxes; constitutional inhibition applies to former, not to latter.*—The constitutional inhibition is against levying taxes, a legislative function, and not against assessing taxes, the work of the assessor; and hence, the constitution does not inhibit the assessment and collection of taxes which have been levied, but which have escaped the assessor, or, by reason of defective machinery, could not be collected. But when the legislature declares a new subject of taxation, not theretofore taxed, or attempted to be taxed, and levies a tax upon it, which, in the aggregate, transcends the constitutional limit, calling it a tax for past years can not heal the infirmity.

10. *Section 4 of article xi of constitution, limiting rate of taxation; when statute not within inhibition.*—Section 4 of article xi. of the constitution was not intended to prohibit the enactment of a statute which should operate from year to year until altered or repealed, as the legislative function may be performed in one year, to be operative for successive years; but its meaning is, that a greater burden than three-fourths of one per cent. shall not be levied or imposed in and for one year.

APPEAL from Mobile Circuit Court.

Tried before Hon. WILLIAM E. CLARKE.

The tax assessor of Mobile county, on 1st August, 1881, assessed, and returned for taxation to the judge of probate, for each of the years 1878, 1879, 1880 and 1881, forty shares of the capital stock of the National Commercial Bank of Mobile, a corporation organized as a national banking association under the acts of Congress providing for the organization of such associations, which belonged to the appellant; and also the shares of said stock belonging to other shareholders. These shares were assessed at par, without any deductions for or on account of any indebtedness which the shareholders owed. At the August term, 1881, of the Board of Revenue and Road Commissioners of Mobile county, "sitting as the Court of County Commissioners for said county, and, by special act of the General Assembly, vested with all the powers and duties of said court," the appellant and the other shareholders filed with said board their petition, praying, for causes therein stated, that said several assessments be set aside as illegal and unauthorized, or, if that relief be not granted, to correct certain alleged errors therein. On the hearing said board ascertained the true value of the shares for each of said years, which was less than par, and corrected the assessments by substituting the value thus ascertained for the value returned by the assessor. The board also further corrected said assessments by deducting from each of them a sum equal in amount to the excess of the indebtedness of the several shareholders over and above their respective solvent credits or credits of value. As to the assessment against the appellant, these were the only corrections made by said board; and, as corrected, this assessment was allowed to stand. It was shown on the hearing that the said bank during said

years owned certain real estate which had been assessed for State and county taxes, and said taxes had been by it paid. It was further shown that $6,000 of the capital stock of said bank was during said years invested in bonds of this State, and $300,000 of said stock was in bonds of the United States. But the board refused to allow any deductions on said assessments on account of these matters.

The proceedings of said board touching the assessment against the appellant were brought by him into the Circuit Court by *certiorari;* and on the hearing that court affirmed the action and proceedings of said board, except as to the assessment for 1879 for county purposes, which was, for reasons not necessary to be here stated, set aside and held for naught. From that judgment this appeal was taken ; and it is the basis of the assignments of error here made.

J. Little Smith, for appellant. (1) It is now well settled that the limitation on the rate of taxation provided by § 5219, U. S. Rev. Statutes, relates not only to the rate *per cent.* laid on valuation, but to the entire system or process of taxation, and prohibits an exaction from the owners of shares of national banking associations, of a larger sum or amount of taxation, in proportion to the actual value of such shares, than is exacted from the individual owners of other moneyed capital in the State, valued in like manner.—*Pelton v. The Bank,* 101 U. S. 146 ; *People v. Weaver,* 100 U. S. 539 ; *Pollard v. State,* 65 Ala. 635. Such shares must, under the general law, be valued at their fair market or selling value, and without any deductions, just as all other personal property is valued, where no deduction is specifically allowed or required respecting the property to be assessed for valuation.—Code of 1876, § 371. When any deductions are authorized, under the system of taxation in this State, they are expressly named, and the particular kinds of property, in the valuation of which such deductions must be allowed, are specifically named.—Code of 1876, § 362, subd. 8, 10 ; *Ib.* §§ 358–9. It is shown by § 360 of the Code that the taxation of "money loaned and solvent credits or credits of value" is not according to the *general rule,* but is subject to *special legislation.* It follows, therefore, that the act of December 8th, 1880, under which the assessment purports to have been made, does not comply with the requirements of § 5219 of U. S. Rev. Statutes, any better than did the act which was held invalid for want of conformity with that statute in *Pollard v. State, ex rel.* 65 Ala. 635. It is true that act declares that the tax to be levied on the value of the shares of national banking associations shall be "the same rate of taxation as is levied on

other moneyed capital;" but this does not relieve it of the objectionable discrimination complained of. For it lays such rate on the valuation of the shares, and leaves the valuation to be made under the general rule, and not under the special rule provided for the valuation of money and credits. It, therefore, in its effect, operates an unauthorized discrimination against money invested in such shares. Moreover, the language of the act which was condemned for said cause in the case of *People v. Weaver*, 100 U. S. 540, is exactly the same as that used in the act under consideration. (2) But it is insisted that, even if the foregoing propositions be correct, still the appellant can not raise the question of the invalidity of the act, and of the taxation, for the cause last stated, because he did not show that he had debts to be deducted from the valuation of his shares, under the decision in case of *Supervisors of Albany v. Stanley*, 105 U. S. 305. Of course, it is for this court to determine whether, after having so carefully, and so recently reviewed its decisions on this subject, it will now overrule that decision upon such attempted fine-spun distinctions as that case is made to turn on. (3) The National Commercial Bank of Mobile owned and paid taxes on real estate each year for which the assessment was made, valued at $19,290, and no consideration of that was had in said assessment and taxation. The act of December 8th, 1880, makes no provision by which the holders of the shares taxed could get the deduction or benefit paid on such real estate; but the shareholders of stock in corporations of the State do get the benefit of taxes paid on real estate owned by such corporations. *Pollard v. State*, 65 Ala. 635, and cases there cited. But it is insisted by the appellees, that this court did not sufficiently discriminate in that case between capital stock and the shares of capital stock. The cases cited in that case show that the court did not overlook that matter. Besides, the question to be borne in mind is, does the whole system or process of taxation discriminate unfavorably against capital invested in national bank stock; and this mode of taxation, the court clearly shows, does so operate. It will be noticed that sub-division 10, § 362, and subdivision 9, § 358 of the Code impose restrictions aganist taxation on the shares of State corporations, which are not provided in the case of shares of national banking associations. It must also be noted that subdivision 9 of § 358 is not an absolute exemption of the shares mentioned in it from taxation, but only when the corporation whose shares are so provided for, lists its property for taxation. That is, it is a provision to avoid double taxation, which is not made in case of national banking associations, and their shareholders. If, then, the language of the act of December 8th, 1880, be construed to authorize the deduction, still there was error in

the action of the courts below; for they refused said tax-payers the benefit of the amount paid by the bank on its real estate. (4) As to the operation of the second section of the act of December 8th, 1880. Prior to the date of the act, there was certainly no law in this State which authorized the taxation of shares of national banking associations.—*Pollard v. State, supra.* The act was enacted before that decision was made, and this section was manifestly written upon a different idea. As there was no law which authorized such taxation, it is difficult to understand how property escaped taxation, when no law imposed any tax on it. It is also difficult to see how any act of the General Assembly can constitutionally authorize the levy, as is done in the act under consideration, *in* any one year, of about six or eight times the rate of tax, which, *in such year,* is levied on other property.—Cons. Art. XI, §§ 4, 5, 7; Code, p. 145. It is repeated *three* several times in these sections, that there is "no power to levy, *in any one year*, a greater rate of taxation than three-fourths of one *per centum* on the value of property within this State." The limitation is against the power to levy *in* any one year a greater rate, etc.; against the power to levy beyond the rate named *in* any one year. It is not a limitation to tax an excess over the rate named *for* any one year; but it is clearly stated to be a limitation to tax beyond the rate IN any one year. The statute under consideration does not simply authorize the exercise of an existing power, but attempts to authorize the assessment and collection, in 1881, of taxes for 1878, 1879 and 1880, which were never laid in those years by any valid law; the levy and collection of a tax for four years and greatly beyond the constitutional limit. This can not be constitutional. (5) All the cases referred to by the appellee providing for the collection of back taxes, are cases where there had been a levy under some valid law, but the tax had not been collected by reason of some informality, or error of the officers in the assessment under such levy, whereby the property so taxed for the preceding time had escaped taxation imposed on it by some valid law, or where there was some obstacle arising from some intervening legislation, which had substantially been pronounced invalid, after which there had been subsequent legislation to correct the evils arising out of the erroneous construction of the law which interposed the obstacle. In each case, however, the law which levied the tax was full and complete to levy and collect the tax, and the subsequent law, which came to aid in the collection of the tax, was simply to remove the obstructions in the way of arriving at the right construction and application of such complete law. Therefore, the cases furnish no analogies in the case of an act so framed as to be defective in this: That it wanted

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

power to tax at all.  The act of 1880 does not aid, but imposes the tax.  (6) It is further contended that the nullity of the act is still more apparent, when its provisions for the assessment and collection of taxes for county purposes, for the back years named, are considered; and this point discussed.

WM. G. JONES, *contra*, for Mobile County.  (1)  All presumptions are in favor of the validity of the act under consideration—act of December 8th, 1880.  If its language is so general or obscure that it is reasonably susceptible of two constructions, one of which would render it unconstitutional and void, and the other would render it constitutional and valid, the court is bound to give it that construction which would render it constitutional and valid.  In passing this act the legislature must be presumed to have known what was our then existing statute law on this subject—what was the United States statute, and the decisions which had been previously made upon it by our Supreme Court, and the Supreme Court of the United States.  The latter court had decided, in *People v. Weaver*, 100 U. S. 539, that a State statute which *refused* to a stockholder in a national bank " the same deduction for debts due by him from the valuation of his shares of national bank stock, that it allows to those who have moneyed capital otherwise invested, is in conflict with the act of Congress "; and our Supreme Court had, in *Sumter County v. National Bank of Gainesville*, 62 Ala. 464, held that subdivision 7 of § 369 of the Code was unconstitutional. With these lights before it, the legislature could not have *intended* to pass an act which would be in conflict with the United States statute.  Not only from this consideration, but from the language of the act, it is clear that, in passing the act of December 8th, 1880, the legislature intended by it, taking it in connection with the provisions of our Code, to make our law consistent with the act of Congress, as construed in *People v. Weaver, supra*.  If it has failed to do so, it must be from ignorance, or want of skill, neither of which will be presumed. (2)  Construction of act of December 8th, 1880.  The first section of the act, following exactly the words of the act of Congress, levies on the value of each share of national bank stock " the same rate as is levied on other moneyed capital."  Looking to our Code, as we must do, to find what is the rate, though we can not find "moneyed capital" mentioned *eo nomine*, we do find a rate of taxation levied on " all money loaned and solvent credits or credits of value."—Subd. 8, § 362 of Code.  These, in common parlance, are *moneyed capital*, and are held, in many adjudged cases, to be *moneyed capital*, within the meaning of that term as used in the act of Congress.  This then is the *rate* manifestly referred to in in the act of December 8th, 1880.

This, too, is the rate most favorable to the stockholder; for it allows him to deduct his indebtedness from the value of his stock, and be taxed on the surplus, and no other clause allows this. This construction was adopted in the courts below, and the deduction allowed. So construed, the act harmonizes our law with the act of Congress, and does not come within the decision in *People v. Weaver, supra,* as shown by the decision in *Supervisors v. Stanley,* 105 U. S. 305. (3) The decision of this court in *Pollard v. State, ex rel.,* 65 Ala. 628, was avowedly made on the authority of the then recent decision in *People v. Weaver, supra;* and on the idea that the U. S. Supreme Court in that case decided the New York statute then in question to be unconstitutional and void. But it now appears from the later decision in *Supervisors v. Stanley, supra,* that such was not the decision. This latter case decides that the New York statute is not wholly void, and sustains assessments made under the same statute which was under consideration in *People v. Weaver, supra,* in all cases where the stockholder had failed to claim his right of deduction in due time. This last case is very strong, if not absolute authority, in favor of the appellee in this case. (4) The proper construction of the act of Congress has been frequently considered by the Supreme Court of the United States, and by other courts. It appears to be now well settled that 'it was not the intention, or effect of the act of Congress to curtail the power of the States on the subject of taxation, or to prohibit the exemption of particular kinds of property; that a State tax law is not violative of the act of Congress merely on the ground, that it allowed a partial exemption of a certain kind of *moneyed* capital; nor because *some moneyed* capital was exempted; and that it is a sufficient compliance with the act of Congress, if the rate of State taxation is the same, or not greater than on the *moneyed* capital of *individual* citizens *which is subject or liable to taxation.—People v. Commissioners,* 4 Wall. 244; *Hepburn v. School Directors,* 23 Wall. 485; *Adams v. Nashville,* 95 U. S. 19; *Everitt's Appeal,* 71 Penn. St. 216. These cases are cited with approval in *Pollard v. The State, ex rel., supra;* and they sustain the validity of the act of December 8th, 1880, and furnish an answer to all objections taken against the act, so far, at least, as the first section of the act is concerned. (5) Construction of second section of the act of December 8th, 1880. It is contended for the appellant that, prior to the passage of this act, there was no valid law in this State levying any tax on shares of stock in national banks, and, therefore, it can not be said with propriety that they had *escaped* taxation during the years preceding the enactment of the statute. It is, however, insisted for the appellee, that our prior

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.] ·

legislation furnishes a good and sufficient answer to this objection. No *special* provision for the taxation of such shares in our revenue laws prior to the passage of the act of February 27th, 1875 (Code, Subd. 7 of § 369), is now remembered. But under the revenue act of 1868, and succeeding revenue statutes, such shares were held to be taxable under the general description of property. This was decided in *McIver v. Robinson*, 53 Ala. 456, and again, in 1878 and 1879, in the Sumter county cases. So stood our statutes and decisions when the act of December 8th, 1880, was passed. The second section of the act was intended to be *remedial* by providing a better mode of assessing and collecting escaped taxes, imposed by the pre-existing laws. This the legislature might constitutionally and properly do. Cooley on Tax., ch. X, pp. 223–4. The decision in the case of *Pollard v. The State, supra,* was made subsequent to the passage of this act, and can have no bearing on the question of the intention of the legislature in passing the act. That decision was made, as now appears, under a misapprehension as to what was the decision of the Supreme Court of the United States in *People v. Weaver, supra.* It practically nullified a provision of our revenue laws, so far as concerns shares of stock in national banks, which had been acted on for more than ten years, and that with the sanction of this court; and it overrules, to some extent, four recent and well considered decisions of this court. Under such circumstances we may, without any disrespect, ask this court to reconsider that decision. · (6) If, however, the second section of said act is and was intended to be retrospective, so as to subject to taxation for the years from 1875 to 1880, inclusive, property as to which no *valid assessments* of taxes could be made during those years, we insist that the section is not void on that ground. Our legislature has plenary legislative power, except so far as it is limited by some restriction in the constitution of the United States or in that of this State. We know of no provision of either which prevents the legislature from passing such a retrospective law.

GAYLORD B. CLARK, *contra,* for the State.—(1) The act from which section 5219 of Revised Statutes of the United States is taken, was passed June 3d, 1864. It authorized the tax of the *shares* of national banking associations as the property of the individual shareholders, and also the taxation of real estate as the property of the corporation. As it was originally enacted, it contained two restrictions upon the power to tax the shares: (1) That the rate should not be greater than that assessed upon moneyed capital of the individual citizen; and (2) that there should be no discrimination in favor of the shares of State banks. Under the operation of this act the following

cases were decided: *Van Allen v. The Assessors*, 3 Wall. 573; *The People v. The Commissioners*, 4 Wall. 244; *National Bank v. Commonwealth of Kentucky*, 9 Wall. 353; *Lionberger v. Rouse*, 9 Wall. 468. These authorities and the statutes thereby construed discussed. (2) But on the 10th of February, 1868, Congress passed an act on the subject of taxing shares in national banks, which had the effect of amending section 41 of the act of 1864, by striking out the second restriction placed on the taxing power of the States. Where a change of this sort is made in a statute, it is presumed to be made *ex industria*, and for a purpose. What is that purpose, and what is the effect of the change? The proviso operated as a restriction on a broad power of taxation given to the States in the first part of this section; the repeal of the proviso was a withdrawal of such limitation or restriction on the exercise of the power, and is equivalent to an express enactment of the converse of the proposition stated in the proviso. This is clearly recognized in the case of *Lionberger v. Rouse, supra*. As said in that case, the power of the States to tax shares of national banks is now "*subject only* to the restriction, that the taxation shall not be at a greater rate than is assessed on other moneyed capital in the hands of *individual citizens*." These words, *individual citizens*, exclude, as far as words can, any idea of the application of the first, and now only restriction to moneyed capital in the hands of corporations. (3) Not only is the restriction confined to the rate charged on moneyed capital in the hands of the individual citizen; but it is clear that, as the law now stands, the *exemption* of *any* class of moneyed capital from taxation is not a violation of the restriction of the act of Congress. The restriction is, that when moneyed capital of any class is taxed as such, the shares of national banks shall bear no greater rate.—See *National Bank v. Commonwealth, supra; Hepburn v. The School Directors*, 23 Wall. 480, 485; *Adams v. Nashville*, 95 U. S. 19. A conclusion from these decisions is, that the States may entirely exempt any particular class of moneyed capital from taxation, and of course, as to such exempted capital, any rate whatever on the shares of national banks would be in excess; but the law has no reference to that; it merely confines itself to a comparison of the rate imposed on national bank shares with the rate which may be actually imposed on other portions or classes of moneyed capital, which is actually taxed as the property of individuals. (4) Applying these principles to the statutes of this State now in force, and applicable in their terms and operation to the subject-matter, we think it can be plainly made to appear that the appellant has secured a judgment more favorable than he was entitled to. There is no express restriction in the act of De-

cember 8th, 1880, of which appellant can complain. The law, therefore, is not void. The only questions are: First, can it be so practically applied under the general law governing taxation, as to be operative, and not work an actual discrimination against the appellant; and, second, has it been so applied in this case. The statute does not fix the rate in terms, but we insist that it does properly fix it by reference—*certum est quod certum reddi potest.* It certainly fixes the same rate as that imposed on other moneyed capital. To say that we can not ascertain from the law with certainty what the rate imposed on moneyed capital is, is to say that all existing laws attempting to impose such tax on any or all moneyed capital are void for uncertainty. But this is not contended for, although it follows as a legal sequence from the argument made by appellant's counsel. By section 368 of the Code, and the acts amendatory thereof, a uniform rate is provided, which operates uniformly on all property *assessed*, or liable to taxation. By both the constitution and the statutes this rate is to be assessed on the actual value; and such also is the provision of the act of December 8th, 1880. In subdivisions 7, 8, 9 and 11 of § 362 of the Code, a tax is levied on designated species of moneyed capital of individuals; and as far as any subject is taxed at all, the rate is the same as that allowed to the national bank shareholder. By subd. 9 of § 358 of the Code all shares of the capital stock of any corporation, which is required to list its property for taxation, are entirely *exempted from all taxation* whatever, and can not be assessed *against the shareholders* of such corporations. This total exemption of the shares as such is a *total exemption* of a portion of the moneyed capital held by the individual citizen; and is such an exemption as can properly be allowed under the influence of the cases before referred to. It is identical in principle with the case of *The People v. Commissioners*, 4 Wall. 244. There is also exempted by subd. 7 of § 362 of the Code, money held subject to draft in the prosecution of a regular exchange business; and by subdivision 9 of the same section, money employed or invested as therein stated is also wholly exempted, if otherwise taxed as capital. These are neither deductions nor abatements of a tax levied, but are exemptions from all taxes of that class of moneyed capital in the hands of the individual, provided the *individual* shall have it assessed as capital. But no provision is made in the Code for the taxation of such moneyed investments in the *individual as capital*; and hence, as to this it is only an apparent exemption. If, however, the money so employed or held should belong to a *corporation*, it might operate as an exemption by virtue of subdivision 10. But the inhibition is not *now* against a discrimination favorable to *cor-*

*porate* moneyed capital, or has it ever been against discrimination, when brought about by a total exemption from taxation. (5) The case of *Pollard v. State, ex rel.* 65 Ala. 628, cited and commented on; and it was contended that this court misapprehended the effect of the decision in the case of *The People v. Weaver*, 100 U. S. 539, as shown by the subsequent case of *Supervisors of Albany v. Stanley*, 105 U. S. 305; and further that neither of these cases in any way modified the former cases hereinbefore cited, which permit exemptions of a portion of moneyed capital from taxation altogether. It was further contended that the case made by the record in this cause was clearly within the rulings in *Hills v. The Exchange Bank*, 105 U. S. 314; and *Evansville Bank v. Britton, Ib.* 322. (6) As to the real estate of national banks being taxed, as the property of the banks, without allowance to the shareholders on account thereof, we find an express authority for such seeming double taxation in the enabling act of Congress. It is true that when the *capital* of a State bank or other corporation is taxed, such portion *of such capital* as is listed and taxed as property, is deducted from the value of such corporate capital.—Code, § 362, subd. 10. But this is not an illegal discrimination against the shareholders of national banks, nor against the capital stock of such banks; because the restriction of Congress does not apply to the case, and because there is no tax at all on the *capital of national banks*, as to which a comparison could be drawn. We think, therefore, that the reasoning in *Pollard v. State, ex rel., supra*, went further than was contemplated by the decisions of the U. S. Supreme Court and the statute which they construed. (7) In this case every shareholder who proved the existence of debts above his solvent credits was allowed such deductions; and hence, on that score, he has no cause of complaint. We hope the court will pass upon the question as to whether the shareholders are entitled to the deductions actually allowed, although no cross appeal was taken; not, of course, to operate on the judgment in this case, but as a guide for the future. That the machinery of our law is adequately certain to protect against any improper valuation, is shown by the record in this case, where the assessor's valuation was reduced to the actual market value. No such discrimination is shown, either in the operation of the law, or conduct of the officers making the assessments, as vitiates the judgment of the court below, under the principles decided in the case of *Pelton v. The National Bank*, 101 U. S. p. 143.

STONE, J.—The authority to tax shares in national banking associations for State purposes, is uniformly held to be de-

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

rived from the act of Congress, which confers the power. Rev. Stat. U. S. § 5219; *Pollard v. State, ex rel.* 65 Ala. 628; *Farmers' National Bank v. Dearing,* 91 U. S. 29. Without such statutory concession, no such tax could be levied. The power is conferred, not in general terms, but with limitations. The language is, that nothing in the laws of Congress "shall prevent all the shares of any association from being included in the valuation. of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county or municipal taxes, to the same extent, according to its value, as other real property is taxed." The leading policy of these restrictions can not be misunderstood. The first was intended to prevent unfriendly, discriminating assessments against investments in the stock of national banking associations, lest thereby such investments should be discouraged and hindered by excessive burdens. Hence, the burden should be no greater than that levied by the State on other moneyed capital in the hands of individual citizens. You may tax the shares, said Congress, for the support of your government, which protects them in common with all other material interests, but you can not lay upon them heavier burdens than you lay on other moneyed capital. The act discriminates carefully between the capital stock of such banking associations, and the shares in such capital stock. "The tax on the shares," as said by Justice NELSON in *Van Allen v. The Assessors,* 3 Wall. 583-4, "is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. . . The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and, upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts. This

is a distinct, independent interest or property, held by the shareholder, like any other property that may belong to him." Speaking of the difference between the shares and the capital stock, we, in *Sumter County v. National Bank*, 62 Ala. 464, said: "It is the difference between the several parts and the whole; between the tributaries and the congregated volume which forms the river; . . between an artificial entity, called a corporation, having a local habitation and a name, capable of suing and being sued, and which may survive all the shareholders of any given period, and the several owners of the shares, who are commonly real persons, and who may undergo constant change by transfer or death, without disturbing or affecting the continuance or identity of the corporation."

National banking associations, being the creatures of Congress, and owing their legal existence to that body; and the right of the States to tax any thing pertaining to them being derived from the grant made by Congress, it follows logically and legally that we must accept the power, with all the conditions and reservations they have annexed to its exercise. And it equally follows, and such are its uniform rulings, that the Supreme Court of the United States has the reserved power, in *dernier resort*, of revising, and, if need be, of reversing the rulings of the State courts, bearing on the exercise of this power by the States. The question of the restriction imposed by Congress, that State taxation on the shares of national banks "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens," has led to much contention, and, to our apprehension, somewhat varied rulings in that court of last resort.—See *Van Allen v. The Assessors*, 3 Wall. 573; *People v. Commissioners*, 4 Wall. 244; *National Bank v. Commonwealth*, 9 Wall. 353; *Hepburn v. School Directors*, 23 Wall. 480; *Adams v. Nashville*, 95 U. S. 19; *People v. Weaver*, 100 U. S. 539; *Pelton v. National Bank*, 101 U. S. 143; *Cummings v. National Bank*, *Ib.* 153; *Supervisors v. Stanley*, 105 U. S. 305; *Hills v. Exchange Bank*, *Ib.* 319; *Evansville Bank v. Britton*, *Ib.* 322.

Until the enactment of the statute approved December 8, 1880.—Pamph. Acts, 7—there was no express provision in our statutes for taxing the shares of national banks. We had provision for taxing the capital stock of incorporated companies.—Code of 1876, § 362, subd. 10. This did not affect national banks, for Congress had not granted power to the States to tax the capital stock of such associations. Our revenue system had also levied a tax on all other property, real and personal, not otherwise specified therein.—Same section, subd. 13. Under the clause last cited, attempts were made to assess and collect taxes on the shares of national banking associations.

Some of our earlier rulings maintained such assessment and collection, while we steadily declared that all attempts to tax. the capital stock of such associations was forbidden by law. *National Com. Bank v. Mayor*, 62 Ala. 284; *Sumter County v. National Bank*, *Ib.* 464. In *Pollard v. State, ex rel.* 65 Ala. 628, the question was again presented of the power to tax the shares of national banking associations under subd. 13 of section 362, *supra;* and, overruling our former decisions, we held that that statutory provision did not authorize the assessment. The effect of that ruling was that until December, 8th, 1880, there was no statute in this State which authorized the assessment of shares in national banks for taxes. We added: "Whether the recent act is so framed as to harmonize existing provisions of the Code with the requirements of section 5219 of the United States Revised Statutes, is a question which is not necessarily presented by the record, and is, therefore, left undecided in this case."

The decision in the case of *Pollard v. State, ex rel., supra*, was rendered by this court, soon after the publication of the ruling of the U. S. Supreme Court in *People v. Weaver*, 100 U. S. 539, and conformed to that ruling. There was then no later decision of that court, bearing on that question, and we had no option but to follow it. But, if the question were left to our own uncontrolled and unaided judgment, we think we correctly ruled that our former statutes did not justify the assessment we therein pronounced invalid. The case of *People v. Weaver* arose under New York statutes. Before the national banks were authorized, it had been enacted in New York that tax-payers should be allowed a credit of the amount of their just debts from the sum of their taxable property, and should be assessed for taxes only on the excess. The statute also provided how the tax-payer's indebtedness was to be made known. The result was, that taxes were assessed and collected only on the net value of the tax-payer's estate—what he would be really worth, after paying his debts. In 1866 the legislature of that State provided that the shares of all banks, State and National, should be assessed and taxed at their value. This statute is confined in its terms to shares of stock in banks, and makes no mention of any indebtedness of the tax-payer to be deducted. Williams, a tax-payer, whose shares in a national bank had been assessed, appeared before the board of assessors, and claimed a deduction of the sum of his indebtedness from the value of his bank shares. He submitted his affidavit, in the form the older statute had required. The credit claimed was disallowed by the assessors, they holding that the later statute made no provision for such discount or deduction, but properly construed, denied such deduction. And the courts of

New York confirmed their ruling. The case was then appealed to the Supreme Court of the United States. The judgment of the Court of Errors of New York was there reversed by a unanimous ruling of the court, Justice MILLER delivering the opinion. Among other things, he said: "The statute of New York, as construed by the Court of Appeals, in refusing to plaintiff the same deduction for debts due by him, from the valuation of his shares of national bank stock, that it allows to those who have moneyed capital otherwise invested, is in conflict with the act of Congress." This appeal, it will be observed, raised the question, and only the question of Williams' liability on the assessment of his shares of stock in the national bank. Speaking of the said statutes of New York, the United States Supreme Court, in the later case of *Supervisors v. Stanley*, 105 U. S. 305, made emphatic what had been implied in their former ruling, that they were not entirely inoperative. They were only inoperative to the extent they actually taxed national bank shares at a greater rate than was assessed by the State on other moneyed capital. One question raised in the case of the *Supervisors v. Stanley* arose on the identical claim of Williams to have a discount of his debts, which had been ruled on in the case of *People v. Weaver*. The case of Stanley, however, involved the liability of other shareholders to taxation, who were not shown to have any debts to be discounted from the value of their taxable property. The majority of the court held that this latter class had no cause of complaint against the New York statutes, or their construction by their Court of Appeals, because "the denial of this right [deduction of indebtedness] does not affect him [the shareholder]. He pays the same amount of tax that he would if the law gave him the right of deduction."

In the case of *Evansville Bank v. Britton*, 105 U. S. 322, the question arose under the revenue system of Indiana. This statute allowed a credit to the tax-payer of the amount of his indebtedness from two named classes of taxable values: 1. Credits or money at interest, either within or without the State, at par value. 2. All other demands against persons or bodies corporate, either within or without the State." From all other subjects of taxation, no deduction of indebtedness was allowed. The court made the same ruling in that as in the *Stanley case*, namely: That when no deduction was allowed the tax-payer for his indebtedness, the tax on national bank shares was invalid. It was repeated, however, that this principle would not apply to those shareholders, who failed to show they owed debts, which they claimed the right to have deducted.

The foregoing are the latest rulings of the Supreme Court of the United States on this question, that have come to our

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

knowledge. It will be seen that the validity of State taxation on national bank shares is made by them to depend, not so much on the frame of the State law which levies it, as it does on the operation of the statute on the individual tax-payer. In other words, unless the tax-payer is himself subjected to a greater rate of taxation on his bank shares, than he is on his other moneyed capital, then the State law is valid as to him, although as to other shareholders in the same bank it is invalid, because it denies to them discounts from the value of their shares, which it accords to them in the taxation of their other moneyed capital. We submit if this ruling does not give to statutes, similar to those brought to view in the cases of *Stanley* and *Britton, supra*, a very unequal, if not an oppressive operation. It requires, under one and the same statute, a payment of taxes on all shares of stock held by one class, and relieves from taxation shares held by others, because, forsooth, they owed debts, and the law makes no provision for a deduction of the amount of the tax-payer's indebtedness. And this, notwithstanding the debts for which deduction is claimed, do not, in amount, equal one-half, or even one-tenth of the value of the bank-shares held by such tax-payer. This will certainly give to a State statute an unequal operation, which its framers never could have contemplated. Justice BRADLEY, dissenting, said: " It [the statute] is void, in my judgment, because it makes no exception, but is general in its terms, subjecting to taxation the capital stock [shares of?] of national banks, without the privilege of deducting debts. Denying to it operation and effect as to those who desire to claim the benefit of the deduction, and giving it effect as to all others, is to tear a portion of the law out by the roots." In our opinion Justice BRADLEY's opinion is the sounder; and if, in the interpretation of our statute, we come to the conclusion that it is invalid because it makes no provision for proper deductions, we will hold it invalid *in toto*. Suppose a State statute should enact that shareholders in national banking associations who owe no debts, shall pay a tax thereon at their market value, at the same rate as that levied on lands and personal property; but if the shareholder owe debts, his shares shall not be taxed. Such tax might not be a direct violation of the enabling act of Congress. Could it be upheld in this State? We apprehend not.—Const. of Ala. Art. 11, § 6; *Mayor v. Stonewall Ins. Co.* 53 Ala. 570.

By the act which became a law December 8, 1880—Pamph. Acts, 7—it was provided: " That there shall be levied and collected on the value of each share of every national banking association located within this State, whether held by residents or non-residents of the State, the same rate of taxation as is levied on other moneyed capital, the same to be levied and collected

27

in the county where each such association is located and not elsewhere, and to be paid by each such association for the shareholders thereof." This statute, it will be observed, conforms to the second of the two restrictions imposed by the enabling act of Congress. It is also within permitted bounds when it requires the tax to be paid by the bank for the shareholders.—*National Bank v. Commonwealth,* 9 Wall. 353. It is contended for appellant that the statute is invalid, because it makes no provision for deducting the tax-payer's indebtedness from the value of his shares, and taxing him only on the balance. Part of this argument, if not the whole, rests on the language of our statute, which declares and defines the subjects of taxation. One class of such subjects is expressed in this language (Code of 1876, § 362, subd. 8): "All money loaned and solvent credits or credits of value, from which credits the indebtedness of the tax-payer shall be deducted, and the excess only shall be taxed." In the case in hand, the shareholders were allowed a credit against the value of the shares, of the amount of their debts; and under the rule declared in *Supervisors v. Stanley,* and *Evansville Bank v. Britton, supra,* the assessment complained of in this case would be upheld, if carried to the Supreme Court of the United States. This meets the first of the restrictions imposed by the act of Congress; for the taxation was not at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of the State. Our statute is not materially distinguishable from that of Indiana on the subject of deductions; and if the sum of the tax-payer's indebtedness had been allowed to be deducted in *Evansville Bank v. Britton,* and the excess only had been taxed, there is nothing stated in the opinions to show that such assessment would not have been pronounced free from error. The reasoning of the court clearly shows that such assessment would have been maintained, for the tax-payer would then have had secured to him all the act of Congress requires.

It is argued, however, that our statute makes no provision for such deduction, and therefore the assessment must fall, being without the law. Can this be maintained? It is our duty to so construe the language of the act as to uphold it, if its language, reasonably interpreted, will admit of it. The act of Congress, imposing the restriction we have been commenting on, had been on the public statute book for many years. Our own statute, providing for a deduction of the tax-payer's debts from the sum of his money loaned and solvent credits, and taxing only the balance, had also been long in force. Money loaned and solvent credits are clearly moneyed capital, and probably constitute the most valuable part of what may properly be classed, in common parlance, as moneyed capital. *Peo-*

*ple v. Weaver* had been decided at the term—possibly a year—preceding our enactment of December 8, 1880. Is it improbable that our legislature had in view this ruling of the United States Supreme Court? They certainly had the act of Congress in contemplation. The language of the act proves that. And did they not also consider its construction? We think we do no violence to the language of the statute when we hold, as we do, that it allows a deduction of the tax-payer's debts, because another and very valuable class of moneyed capital, under our system, enjoys the privilege of such deduction. We tax such bank-shares, as we do other, and the most favored moneyed capital.

Inasmuch as our revenue system allows a deduction of the tax-payer's debts from only one class of taxable subjects—money loaned and solvent credits—our own unaided judgment would possibly lead to the conclusion, that bank-shares, being an entirely different species of property, could not claim such deduction. What is the proper import of the words, "other moneyed capital," in the act of Congress? It certainly declares that shares in national banks are moneyed capital. The word *other* proves that. Does not this prove that Congress had in contemplation moneyed capital of like kind, or similarly invested? Now, from other moneyed capital of like kind, our statute, and, it would seem, the statute of Indiana, allows no deduction on account of debts of the tax-payer. But the ruling in *Evansville Bank v. Britton*, leaves this question not an open one. We conform our rulings to that decision.

Another objection to the validity of the present assessment is based on subdivision 10, section 362 of our Code, which enacts that "the capital stock of all incorporated companies created under any law of the State, whether general or special, except such portion of the capital stock as may be invested in property, and taxed otherwise as property, shall be subject to taxation." The argument is, that because of this discount from the taxable value of other investments in corporations, and which was not allowed in this case, this is a violation of the first restriction imposed by the act of Congress. We answer this objection as follows: The difference between the capital stock of a corporation and the shares of stock in that corporation is well marked, and perhaps is nowhere more clearly shown than in the opinion of Mr. Justice NELSON in the case of *Van Allen v. The Assessors*, 3 Wall. 573. In the one case the property is in the corporation, in the other it is in the individual. And Congress has not only recognized, but has declared the difference, in that it prohibits all State taxation whatever on the one, while it expressly permits it to be levied on the other. The corporation owns the capital stock,

and whatever that stock may be invested in. As said by Mr. Justice NELSON, "the tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal. . . . The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and upon its dissolution or termination, to his proportion of the property that may remain of the corporation after the payment of its debts."— *Van Allen v. Assessors, supra.* And we may add, the insolvency or bankruptcy of the corporation would not imply the insolvency of the shareholder, nor would the fact that the corporation owned real estate constitute the shareholder a freeholder. Shares in corporations are personalty, no matter what the capital stock may be invested in. So, a tax on the shares of national banks is not a tax on the government bonds, in which the capital stock is invested. *Van Allen v. Assessors, supra.* But a tax on the capital stock of a bank, whose capital is invested in government securities not allowed to be taxed, would be a tax on such securities, and illegal.—*Bank Tax Case,* 2 Wall. 200. The result of these holdings is, that capital stock of a corporation, which is invested in non-taxable property, can not be made the subject of State taxation, while the *shares* in the corporation can claim no such exemption. This is a clear discrimination between the two properties, and shows that taxing the one is not taxing the other. The nature and property of the capital stock in corporations are essentially different from the nature and property of the shares in such corporations.

Under our revenue system, we allow a deduction of the amount of capital stock invested in property and taxed as property, only from the assessed value of the capital stock of corporations. We grant no such deduction to the shareholders. Neither do we allow to the corporation, nor to the shareholder any deduction for debts the corporation or shareholder may owe. The discount on account of debts, permitted under our system, is limited to the single subject of solvent credits; for money loaned is, at last, but a credit. Hence, if the tax-payer own no solvent credits, he is entitled to no discount, no matter what may be the amount of his indebtedness. To hold that a shareholder in a national bank is entitled to have his assessment reduced, because some part of the capital stock is invested in property, and taxed as such, would be to accord to him a double discount, while no other tax-payer is favored so much; would be, to allow him a credit for all debts due by him, thus placing him on an equality with the owner of solvent credits, and to allow him a further deduction of a proportionate

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

part of the capital stock invested in property, thus placing him, an individual, on an equality with our artificial persons, called domestic corporations. Congress denied to us the right and power to discriminate against investments in national bank shares. It was not the intention of that body that our assessments on such shares should be lighter than the taxes we impose on other moneyed capital. We consider this objection unavailing.

The second section of the act of December 8, 1880, is in the following language: "There shall be assessed and collected in any county where such association is located, upon each share of the capital stock of such association which has escaped taxation for any preceding year since 1874, the same rate of taxation, State and county, as was in each year assessed and collected upon other moneyed capital." Under the first and second sections of the act we are construing, there was assessed at one time on the shares of the National Commercial Bank of Mobile, taxes for the years 1878, 1879, 1880 and 1881. It is urged before us, that the assessment for the years preceding the enactment of the statute was unauthorized, and in violation of article 11, sections 4, 5 and 7 of the constitution of Alabama. Section 4 ordains that there shall not be levied, "in any one year, a greater rate of taxation than three-fourths of one *per centum* on the value of the taxable property within this State." Section 5, employing the same language—*in any one year*—limits the rate of taxation for county purposes to one-half of one *per centum ;* and section 7, in the same terms, limits the rate to one-half of one *per centum*, for city, town, or other municipal purposes. The collective sum of the taxes assessed for the four years, shown in this record, greatly exceeds the rates above prescribed. It is contended for the appellee that the word *in* in the constitution, though three times repeated, should be read *for*. Thus read, the constitutional limitations on the power to levy taxes would then be *for* any one year, instead of "*in* any one year." We have been referred to no authorities bearing directly on this question, and, after a pretty careful examination, we have found none.

It will be borne in mind that until December 8, 1880, no legislative attempt was made in this State to tax the shares of national banking associations. It had been declared otherwise in *McIver v. Robinson*, 53 Ala. 456, and in *Sumter County v. National Bank*. 62 Ala. 464. In *Pollard v. State, ex rel.* 65 Ala. 628, we reviewed those decisions, and overruled them, holding, as we have said, that until December 8, 1880, we had no statute authorizing the taxation of national bank shares. Till then we had not declared them a subject of taxation. The legislature levies State taxes, and the assessor assesses them.

422      SUPREME COURT      [Dec. Term,

[Maguire v. Board of Revenue and Road Com'rs of Mobile Co.]

*Perry County v. Railroad*, 58 Ala. 546, 559. There shall not be levied in any one year a greater rate of taxation, is the mandate of the constitution. No tax on national bank shares having been previously imposed, during the year 1880, the legislature did levy such tax, and, by declaring it should be operative during all the time since 1874, the practical effect was to levy, within that one year, taxes that might exceed three-fourths of one per cent. We are speaking of the levy of taxes, a legislative function, and not of assessment, which is the work of the assessor. The constitutional inhibition is against levying. The purpose was, that property should not be excessively burdened, lest, perchance, it might be driven from the State, or the tax-payer ruined. Levying a tax *per centum* in one year, and declaring that the same rate is applicable to several preceding years during which no tax had been levied, would be equally burdensome to the tax-payer, as if the aggregate had been levied in gross. It would be levying in one year, providing for assessment in one year, and for collecting and turning into the treasury in one and the same year, a sum greatly in excess of the constitutional limit. And to what end? Certainly for future administration and d'sbursement; for it could not be applied to the support of government in the years then past. It is difficult to draw a distinction between such levy *for* one year, and *in* one year. In either event the burden is the same, and the use and applicat'on of the money the same. We hold the attempt then made to levy taxes for the years then passed, was violative of the constitution, and must fail.

This question is distinguishable from what is known as escaped taxes. They have only escaped the assessor. Such taxes had been levied, and therefore the constitution does not inhibit the assessment and collection. So, if there had been a levy of taxes, and by reason of defective machinery such taxes could not be collected, we would not doubt the power of the legislature to remedy the defect by retrospective legislation. What we declare is, that when the legislature proclaims or declares a new subject of taxation not theretofore taxed, or attempted to be taxed, and levies a tax upon it, which, in the aggregate, transcends the constitutional limit, calling it a tax for past years can not heal its infirmity.

We have said above that the levy of taxes is a legislative function. The constitutional inhibition is against levying in any one year a greater rate of taxation than a specified *per cent*. Of course it was not intended by this, to prohibit the enactment of a statute which should operate from year to year, until repealed or altered. The legislative function may be performed in one year, to be operative for successive years.

[Dudley, adm'r, v. Steele.]

The meaning is, that a greater burden than three-fourths of one per cent. shall not be levied, or imposed in and for one year.

To the extent that taxes were assessed for the·years 1878 and 1879, the judgment of the Circuit Court is reversed, and here rendered, disallowing those assessments. In all other respects it is affirmed.

Reversed and rendered.