### HAGER et al. v. AMERICAN NAT. BANK.

(Circuit Court of Appeals, Sixth Circuit. January 25, 1908.)

No. 1,688.

1. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

When the validity, meaning, and effect of a state statute involves no question arising under the Constitution or laws of the United States, a court of the United States should accept the meaning and effect given to such law by the highest court of the state, except in the limited class of cases when rights have vested or contracts have been made under such statute before it has received interpretation by the state court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950–957.]

2. SAME—CONSTRUCTION OF STATE STATUTE.

The decision of the Court of Appeals of Kentucky construing Act Ky. March, 1906 (Acts 1906, p. 134, c. 22), relating to the taxation of banks and trust companies, which went into effect June 11, 1906, in so far as it holds that such act was intended to and did apply to assessments made in 1906, and that assessments made for that year after it went into effect were lawfully made thereunder, is binding upon a federal court in a suit by a national bank to restrain the collection of taxes based on such assessment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950–957.]

3. TAXATION—NATIONAL BANKS—TAXATION BY STATE.

That the value of the shares of a national bank includes value due to nontaxable United States bonds owned by the bank is no objection to the validity of an assessment of such shares for taxation by a state without excluding the value of the bonds.

4. SAME—CONSTRUCTION OF KENTUCKY STATUTE—VALIDITY.

Act Ky. 1906, providing the method of taxing state and national banks and trust companies "upon each one hundred dollars of value of the shares" of such banks and companies, as construed by the Court of Appeals of the state, is not invalid as to national banks under the federal law, as imposing the tax upon their capital and surplus, and not on their shares.

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

J. W. Ray, for appellants.
James Helm, for appellee.

Before LURTON and RICHARDS, Circuit Judges, and McCALL, District Judge.

LURTON, Circuit Judge. This is a bill to restrain the assessment of the shares of the American National Bank without deducting therefrom the value of United States bonds held by the bank.

Prior to June 12, 1906, the assessment law of Kentucky did not assess the shares of stock of state banks, but did assess the assets of

all such banks. Under the same law the shares of national banks were assessable, the banks being required to pay such assessment in behalf of shareholders. It is not necessary to go into the details of prior acts. They may be found in the Kentucky Assessment Acts of 1902 (Acts 1902, p. 312, c. 128) and 1904 (Acts 1904, p. 145, c. 66), now sections 4092a and 4092b, Ky. St. 1903. The national banks claimed that this method operated as a discrimination against national banks, inasmuch as the state banks were allowed to deduct from their capital the amount of United States bonds held by such banks, no such deduction being made from the value of shares, that value being ascertained by aggregating the value of all the assets of the bank, and deducting only tangible property separately assessed. And so the Kentucky Court of Appeals held in a test case. Marion National Bank v. Burton, Sheriff, 90 S. W. 944, 28 Ky. Law Rep. 864, 10 L. R. A. (N. S.) 947. In that case the assessments were ordered to be corrected to avoid discrimination by deducting from the aggregate assessed value that part which represented the value of United States bonds so held by such bank.

The present bill seeks the same relief, and there could be no answer made to the contention but for the effect to be given to an act of the Kentucky Legislature which went into effect June 11, 1906 (Acts 1906, p. 134, c. 22), one day before the assessment now complained of was made. The opinion of the Kentucky Court of Appeals, before referred to, was handed down January 31, 1906. The Kentucky Legislature was then in session. To avoid the discrimination which existed under the prior laws, an act was passed which did not, under the Constitution, take effect for 90 days, being June 11th, there being no emergency clause to put it into force earlier. That act was as follows:

"An annual tax at the same rate which may be fixed by law upon other personalty for state purposes is hereby imposed upon each one hundred dollars of value of the shares of state banks and trust companies incorporated under the laws of this commonwealth, and of national banks doing business therein, and such tax shall be paid to the treasurer of the state annually by such banks and trust companies for and on behalf of the owners of such shares of stock, and in addition thereto the said banks and trust companies shall pay to the local authorities in counties, cities, towns and districts taxes at the same rate imposed upon other personalty therein.

"Sec. 2. In order to determine the value of the shares of such trust companies, state and national banks, and to assess all shares in such state and national banks and trust companies for state purposes, it shall be the duty of the president, cashier or other chief officer of each state bank, trust company and national bank in this state, annually between the first day of September and the first day of March, to make and deliver to the Auditor of Public Accounts a statement, verified by its president, cashier or other officer, in such form as the Auditor may prescribe, showing the following facts, to wit: The name and postoffice address of the bank or trust company, the names of the officers, the number of shares of stock and the par and market value of each share, the amount of surplus fund and undivided profits, the amount of value of all real estate situated in this commonwealth, held and owned by the bank or trust company on the first day of September of each year, the amount of its loans and discounts, the amount of its deposits, and such other information as the Auditor may require."

The Act also provided in section 3 that:

"Each bank and trust company shall be entitled to have deducted from the total valuation placed on its shares by said board the assessed value of its

real estate in this state. It shall be the duty of the trust companies and banks to list with the county assessor of each county and with the assessing officer in each city, town and taxing district, its real estate and pay the taxes thereon to the sheriff, and to the collecting officer in each city, town and taxing district.

"Sec. 4. Every state bank and trust company incorporated under the laws of this commonwealth, and every national bank doing business therein, shall make to the assessing officer of the county, city, town or taxing district a report similar to that required by this sub-division to be made to the state board of valuation and assessment for assessment for state purposes. The assessing officer of the county, city, town or taxing district wherein any trust company, state or national bank is situated shall assess the shares of such banks and trust companies for taxation for county, city, town and taxing district purposes in the manner prescribed in this sub-division for assessing the same by the state board of valuation and assessment for taxation for state purposes; and such officer shall make out and return the assessment to the proper authorities of the county, city, town or taxing district at the same time and manner as prescribed by law for the return of the assessment of personal property.

"Sec. 5. All laws or part of laws in conflict or inconsistent with this act, providing for other methods of taxation of shares of national banks or the taxation of trust companies and state banks incorporated under the laws of this commonwealth, in the collection of taxes thereon, are repealed."

The assessment was made, as before stated, on June 12, 1906, no assessment having theretofore been made against the shares of either state or national banks. The method of obtaining the assessable value of the shares of both classes of banks was the same. The reports from the several banks theretofore filed, under the prior acts, were taken, and from those reports the board found the value of their capital stock, surplus, and undivided profits and from that deducted the value of tangible property separately assessed. The result thus reached was treated by the board as fairly representing the assessable value of the total shares. Thus there has been no discrimination between the taxation imposed upon state and national banks, and this harmony has been brought about by a law which now subjects state banks to precisely the same method as that before applicable to national banks.

The first objection to the assessment as made is that the assessors erred in not deducting from the value of the aggregate shares the value of the United States bonds owned by the bank and shown by its report, upon which the assessors acted, because the law of 1906 was not applicable to the taxes of 1906, and that it was therefore error in the board to assess state banks upon their shares, and not to deduct from the valuation of national banks' shares the value of exempt United States bonds held and owned by such bank as required by the law, as settled in Marion National Bank v. Burton, 90 S. W. 944, 28 Ky. Law Rep. 864, 10 L. R. A. (N. S.) 947.

The second objection is that under the act of 1906, assuming it to be the applicable law, the assessment is really upon the capital and assets, although nominally upon the shares. Suits raising precisely the same questions were brought in the state courts. One or more of these had been argued and submitted in the Court of Appeals of Kentucky when this cause came on to be heard. Pending our consideration, that court has handed down an opinion holding, first, that an assessment made on June 12, 1906, was necessarily made under the act of 1906, inasmuch as by that act the prior acts relating to the assessment of

banks, state and national, had been repealed or superseded; second, that the assessment authorized by that act was an assessment upon shares, and not an assessment upon capital and assets. Touching the applicability of the act of 1906 to the bank assessments for 1906, made after that act went into effect, the Kentucky court, in part, said:

"As the assessment was made on June 12th, the day after the act of 1906 went into effect, it is, of course, apparent that the assessment was not made upon reports furnished under the act of 1906, but under reports furnished under the act of 1904. At the time the assessment was made, all prior acts had been expressly repealed by the act of 1906; hence, if the board of valuation and assessment made any assessment at all, it must have been made under this latter act. But, when it is considered that the appellee banks do not maintain that the valuation of their shares were fixed at too high a price, or to show they have made any effort to obtain a reduction in the amount of assessment, or that any error to their prejudice was committed in the manner of valuing their shares, except in the failure to deduct United States bonds, we regard it as immaterial what information the state board of valuation and assessment had before it in making the assessment. This inquiry would be pertinent if the valuation fixed or the method of assessing it was assailed.

"A good deal is said in argument on both sides upon the question whether or not the act of 1906 had a retrospective effect. Counsel for the state insist that it did, while counsel for the bank as earnestly argue that it did not. In our opinion, it is not necessary to give the act of 1906 a retrospective effect in order to sustain the assessment made in 1906. The act of 1906 was a remedial statute, enacted for the purpose of curing defects in prior laws, and to place all banking institutions in the state upon exactly the same footing so far as taxation was concerned, and must be liberally construed to effectuate its intention.

"Under the decision of this court in the Marion county bank cases, the Legislature was confronted with the situation that, under the laws as they then stood, the shares of national banks would not be taxed as other moneyed capital invested in state banks and trust companies, but the latter would in fact be discriminated against, as they did not hold national bank bonds. Knowing that this discrimination would exist if the taxes payable in 1906 were assessed under the existing law, the Legislature undertook to change the law. There were the same reasons for changing it as to the year 1906 as to subsequent years. So, in the first section of the subdivision of the act, relating to banks and trust companies, it provided as follows:

"'An annual tax at the same rate which may be fixed by law upon other personalty for state purposes is hereby imposed upon each one hundred dollars of the shares of state banks and trust companies incorporated under the laws of this commonwealth, and of national banks doing business therein.'

"The purpose was to supersede the old law. The taxes due by banks for previous years had been paid to the state, and it was intended that thenceforth the taxes as to banks should be assessed under the provisions of this act, so that no loss would result to the state treasury from the decision of this court in the Marion county cases. With this purpose in view, sections 5 and 6 were included in this subdivision:

"'Sec. 5. All laws or parts of laws in conflict or inconsistent with this act, providing for other methods of taxation of shares of national banks or the taxation of trust companies and state banks, incorporated under the laws of this commonwealth, and the collection of taxes thereon are hereby repealed.

"'Sec. 6. All national banks, trust companies and state banks shall file with the Auditor their reports herein provided for on or before the 15th day of April, 1906, and annually thereafter on or before March the first. Said reports shall be made up to and including the first day of the preceding September.'

"If it had not been intended that the taxes for 1906 were to be assessed under the act, there was no need for a special repealing clause in this subdivision; and the sixth clause must otherwise be rejected as meaningless. It is true the act did not take effect until June 11th, but the Legislature plainly intended that the assessment should be made under it, and it was done. Even

if an assessment for 1906 had been made before the Legislature met, it could have directed another assessment to be made and the taxes to be paid under it. And so, if the board had made an assessment under the act of 1904, it would have been its duty after June 11, 1906, to have made an assessment under the act of 1906, and the taxes should have been paid under that assessment.

"The fiscal year for 1906 did not expire until June 30, 1906 (Const. § 169), and clearly the board had the power at any time within the fiscal year to make an assessment for that year. Aside from this, it would scarcely be contended that the failure of an assessing officer to make an assessment within the time allowed by law would prevent him from making it within a reasonable time thereafter, or render invalid the assessment so made, unless it could be shown that the meritorious rights of the property owners were prejudiced by the delay. *Anderson v. City of Mayfield*, 93 Ky. 230, 19 S. W. 598. If an assessing board, by failing to perform a manifest duty should prejudice the meritorious rights of the property owner, no doubt he could obtain proper relief; but, in this case the fact remains that the board of valuation and assessment in delaying this assessment did not prejudice the meritorious rights of appellee. The law under which the assessment was made was in every substantial particular identical with the preceding law of 1904. If the assessments had been made under it, the property of appellee would have been assessed at precisely the same sum at which it was assessed. The argument that if its shares had been assessed under the act of 1904, and the capital of state banks and trust companies under the act of 1902, it would have had the right to deduct the value of the United States bonds owned, and hence was prejudiced by the failure to assess under that law, does not impress us either favorably or forcibly. Why would it have been entitled to this exemption? Certainly not on account of anything in the act of 1904, but because of a discrimination in the act of 1902, under which state banks were assessed; and when this was removed, the technical right of national banks to exemption ceased to exist, and it was removed when the act discriminating in favor of state banks was repealed, and they were assessed under an act applying equally and alike to all banks. As the act under which the national banks were assessed did not permit any discrimination against them, either in law or fact, or impose upon them any rate of taxation greater than was assessed upon other moneyed capital, or state banks or trust companies, they will not be heard to say that they were prejudiced by the delay of the assessing board."

This decision by the highest court of the state construing the act of 1906 as a remedial statute, that it operated as a repeal of prior acts, and that the legislative intention was that the assessments of banks for 1906 should be made under that act, that discriminations might be eliminated, is so peculiarly a decision in respect of local law that it ought to be followed by this court. The discriminating feature of the prior law has been removed, not by any change in the method of taxing national banks, but by providing that state banks should be taxed by the same plan. A statute which thus prevents a discriminating method of assessment does not give rise to any such independent right of construction of a local statute as is exercised by United States courts when contracts have been made under a state statute before interpretation by the highest court of the state of the contract. When the validity, meaning, and effect of a state statute involves no question arising under the Constitution or laws of the United States, a court of the United States should accept the meaning and effect given to such law by the highest court of the state, except in the limited class of cases when rights have vested or contracts have been made under such statute before it has received interpretation by the state court. In the latter kind of cases, the federal courts will feel it admissible, in suit

between citizens of different states, to exercise its independent judgment, though, as put in the case of Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359, they "will lean toward an agreement of views with the state court."

The question as to whether the act of 1906 was intended to or did apply to the assessments for 1906, and whether the assessors should not have made all such assessments before June 12, 1906, and under the law in force prior to that act, and whether having omitted to make assessments prior to June 12, 1906, they might not then assess under the new act, were all questions peculiarly for the decision and interpretation of the state court. The contentions in opposition to the view the Kentucky court took are quite plausible. But a majority of that court disregarded them. They present no question arising under the Constitution or laws of the United States. Section 5219, Rev. St., permits the states to assess and tax the shares of shareholders in national banks, only providing "that the taxation shall not be at any higher rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." That the value of the shares included value due to nontaxable United States bonds owned by the bank is no objection to an assessment upon such shares without excluding such value. This has been more than once decided. Van Allen v. The Assessors, 3 Wall. 573, 18 L. Ed. 229; Mercantile Bank v. New York, 121 U. S. 139, 7 Sup. Ct. 826, 30 L. Ed. 895; Cleveland Trust Co. v. Lander, 184 U. S. 111, 22 Sup. Ct. 394, 46 L. Ed. 456; Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901. So far, therefore, as the decision of the Kentucky court involves the applicability of the act of 1906 to the assessments made June 12, 1906, we feel it our duty to accept and follow the interpretation and effect given to that act. Stutsman County v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018; Cleveland Trust Co. v. Lander, 184 U. S. 111, 22 Sup. Ct. 394, 46 L. Ed. 456; Merchants' Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; Louisville & Nashville Railroad Co. v. Kentucky, 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298.

There remains the question as to whether the method of taxing banks in this act of 1906 imposes a tax upon capital and surplus of such banks, and not a tax upon shares. That it is not a tax upon shares is the construction adopted by the bill in this case, and no issue is made by any pleading which challenges the act as really imposing a tax upon the property of the bank. The suggestion that it is really a corporate property tax, and not a tax upon shares, is bottomed upon the case of the Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901. That was a bill filed by a state bank claiming an exemption on account of United States bonds owned by it from a tax which it contended was imposed by the Iowa act upon capital and surplus, and not upon shares as the property of shareholders. Upon examination, the Supreme Court held that it was imposed as a tax upon corporate property, and that against such a tax United States bonds owned by the bank were nontaxable as property of the bank. That case turned upon the interpretation of the peculiar phraseology of the Iowa statute, which differed in material particulars from the

Kentucky act. The latter act has been construed as not imposing a tax upon the corporate capital, but strictly a tax upon shares. See the case of Marion National Bank v. Burton, 90 S. W. 944, 28 Ky. Law Rep. 864, 10 L. R. A. (N. S.) 947. This construction of the act would seem to be conclusive as a decision which we should accept. Upon just such a question the Supreme Court held that the state decision should be followed. Aberdeen Bank v. Chehalis County, 166 U. S. 440, 444, 17 Sup. Ct. 629, 41 L. Ed. 1069. But if we treat the question as one for an independent construction, we agree with the Kentucky court in construing the act as one imposing the tax upon shares and not upon corporate assets. The first section of the act of 1906 provides that the tax shall be "upon each one hundred dollars of value of the shares of state banks and trust companies, * * * and of national banks, doing business therein." And that such "tax shall be paid to the treasurer * * * by such banks and trust companies for and in behalf of the owners of such shares of stock. * * *" That the act requires the bank to pay the tax "for and in behalf of the shareholders" does not prove that the tax is anything else than a tax on shares. The same question was made in National Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701, when a Kentucky act of like character was involved, and in Aberdeen Bank v. Chehalis County, 166 U. S. 440, 17 Sup. Ct. 629, 41 L. Ed. 1069, and in both cases the court held that the bank might be required to pay the tax as a method of collection from the shareholders.

The judgment must be reversed and remanded, with directions to proceed consistently with this opinion.