# Elmwood Cemetery Co. *v.* Tarrant, Tax Collector.

### *Action to Collect Taxes Paid Under Protest.*

(Decided May 31, 1910.   Rehearing denied Jan. 12, 1911.
54 South. 186.)

1. *Taxation; Exemption; Cemeteries.*—Under section 91, Constitution 1901, cemeteries are exempt from taxation without limitation, and hence, the legislature was without power to limit the exemption as was attempted by section 2061, subd. 2, Code 1907.

2. *Same; Corporation; Capital Stock; Exemption.*—Construing together sections 2061, subdivision 2, 2082, subdivision 9, and 2083, Code 1907, and section 91, Constitution 1901, it is held that where property of a cemetery corporation was represented by shares of stock, the corporation's non-taxable property, should be deducted from the market value of the shares in determining the liability of the shares to taxation.

3. *Same; Subject; Corporate Shares and Capital Stock.*—For the purposes of taxation the capital stock of a corporation, and the shares of that stock held by stockholders are two separate and distinct entities.

(Sayre and Mayfield, JJ., dissent in part.)

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by the Elmwood Cemetery Company against George B. Tarrant, Tax Collector, for money paid for taxes under protest. Judgment for defendant and plaintiff appeals. Reversed and rendered.

Count 2 is as follows: "The plaintiff, Elmwood Cemetery Company, a corporation, claims of the defendant, George B. Tarrant, the further sum of $509.02, for that heretofore, to wit, on the 5th day of August, 1909, taxes amounting to $503.62 were assessed against the plaintiff on the shares of its capital stock for the year 1909, the assessed value being $38,740; that the aggregate amount or sum at which the whole of said shares were assessed was $50,000, and that in arriving

at the assessed value of such shares the sum of $11,260, being the sum at which the real and personal property of the plaintiff was returned for taxation for the year 1909, was deducted from said sum of $50,000; that the plaintiff returned for taxation for said year of 1909 certain land and personal property, of the value of $4,260, the taxes on which have been paid, and that the only other property owned or held by the plaintiff on the 1st day of October, 1908, was the cemetery, and that it brought no property into said state after the 1st day of October, 1908, and before the tax assessor of said county had completed his assessment for the said year of 1909; that said cemetery was held, owned, and lots sold therein for profit on said 1st day of October, 1908, and has been such cemetery ever since that time; that under and by virtue of section 91 of the Constitution of Alabama of 1901 said real estate was exempt from taxation for said year 1909, that part of subdivision 2 of section 2061 of the Code of Alabama of 1907 reading as follows: "But where cemeteries are owned, held, and lots sold therein for profit, the same shall not be exempt"—being in conflict with said section of said Constitution exempting cemeteries from taxation, and therefore unconstitutional and void; that on, to wit, the 18th day of February, 1910, the plaintiff, under protest and under duress, paid to the defendant, who was then and is now tax collector of said Jefferson county, Alabama, the sum of $509.21, being the amount of such taxes assessed on said shares of the capital stock of the plaintiff and interest thereon, and gave him notice and warning that it would enter suit to recover the said amount back, and said amount is now in the hands of the defendant."

TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant. Subdivision 2 of section 2061, is in di-

rect conflict with section 91, Constitution 1901, and therefore void.—*Anniston City L. Co. v. The State*, 48 So. 659. When construed together it is evident from subdivision 9, section 2082, and 2083, Code 1907, that the value of the exempt property should be deducted from the value of the shares of its capital stock in determining the value of such shares for taxation.—*State v. Stonewall I. Co.*, 89 Ala. 339; *Tennessee v. Whitworth*, 117 U. S. 129; *New Orleans v. Houston*, 119 U. S. 278; *State v. Branin* 23 N. J. L. 492; *Farrington v. Tennessee*, 95 U. S. 697; *Richardson v. City of St. Albans*, 47 Atl. 100.

ALEXANDER M. GARBER, Attorney General, THOMAS W. MARTIN, Assistant Attorney General, and J. G. GARBER, for appellee. For the purposes of taxation, shares of stock are different and separate from the capital stock of the corporation.—*Com. F. I. Co. v. Montgomery*, 99 Ala. 1. Tax against capital stock is a property and not a franchise tax.—*Stonewall I. Co. v. The State*, 89 Ala. 335. Hence, it appears that the tax is not against the owner of the cemetery. It would be double taxation to assess the shareholders the full amount of the market value of each share without regard to the question as to whether the corporation had returned any other property for taxation.—*Jefferson Co. Bank v. Hewitt*, 112 Ala. 546. The corporation in this instance is merely in the position of a private corporation operating a business enterprise, and hence, not exempt from taxation.—75 N. C. 475; 29 Pa. S. C. 36; 153 Mass. 141. It cannot be successfully maintained that our Constitution contemplated the exemption of any private business enterprise.—*Anniston C. L. Co. v. The State*, 48 So. 659; 24 So. 200; 52 S. E. 851.

SIMPSON, J.—This action is by the appellant against the appellee to recover money paid under protest to said defendant as tax collector. Section 91 of the Constitution of 1901 exempts cemeteries from taxation. Subdivision 2 of section 2061 of the Code, in enumerating the properties exempt from taxation, inserts, after the word "cemeteries," the following words, in parenthesis: "(But where cemeteries are owned, held, and lots sold therein for profit, the same shall not be exempt.)" The court below overruled a demurrer to the first count of the complaint, holding that that part of the section in parenthesis is violative of section 91 of the Constitution, and that the property belonging to a cemetery company cannot be taxed, although it is held and lots therein are sold for profit. The appellee makes a cross-assignment of error as to this action of the court, and as it seems to come first in the natural order of the subject we will dispose of it first.

Section 91 of the Constitution is plain and unambiguous, exempting from taxation all cemeteries, without qualification, and the Legislature has no authority to attach a qualification to it.—*Anniston v. State,* 160 Ala. 253, 48 South. 659. The authorities in other states referred to are based upon entirely different provisions, and have no application to this case. There was no error in overruling the demurrer to the first count of the complaint.

The demurrer to the second count (which will be set out in the statement of the case) was sustained, and this raises the question whether or not the shares of stock which are based for their value, on property which is exempt from taxation, can be made subject to the tax. Whatever might be our views if it were a new question, it is settled by numerous authorities that the

capital stock of a corporation and the shares of said capital stock held by the stockholders are two separate and distinct entities.—Judson on Taxation, § 94, pp. 93; *Bank of Commerce v. Tennessee*, 161 U. S. 134, 146, 16 Sup. Ct. 456, 40 L. Ed. 645; *Shelby Co. v. U. & P. Bank,* 161 U. S. 149, 153, 16 Sup. Ct. 558, 40 L. Ed. 650; *New Orleans v. Citizens' Bank,* 167 U. S. 371, 402, 17 Sup. Ct. 905, 42 L. Ed. 202; *Maguire v. Board of Rev.,* 71 Ala. 401; *Com'l Fire Ins. Co. v. Board of Rev.,* 99 Ala. 1, 4, 14 South. 490, 42 Am. St. Rep. 17. Our state, however, realizing that, whatever may be the technical distinction, each really represents the same investment, has seen fit not to levy any tax on the capital stock of the corporation, but only on the shares of stock held by the stockholders, and has applied to them the usual rules for ascertaining their value which pertain to the ascertainment of the value of the capital stock. It is evident that if the corporation has no property the stock would be valueless, and it would seem that if all of the property of the corporation is exempt from taxation by the Constitution it would be an evasion of the Constitution to levy a tax on the shares of stock, which are merely certificates that the shareholder owns that proportion of the exempted property. Nevertheless, we must interpret the statute in accordance with fixed principles of law, and arrive at the intention of the Legislature by the written provisions of the statute.

Subdivision 9 of section 2082 of the Code provides that the shares of a corporation are subject to taxation, requires the chief officer to make a return of all the property of the corporation, etc., and also of the par value and market value of the shares, also that, in arriving at the value of the shares, the assessor "shall deduct from the aggregate amount of the sum at which

the whole of the shares are assessed the aggregate amount or sum at which the real and personal property of the corporation is returned to the assessor for taxation, owned by such corporation, and the residue of value remaining after such deduction shall be the assessed value of the whole of such shares," etc. Under a previous statute which provided a similar, though not identical, rule for arriving at the value of the capital stock of a corporation, it was provided that the tax was leviable upon "the capital stock * * * except such portions as may be invested in property which is otherwise taxed as property" (subdivision 9, § 453, Code 1886); and it was contended that the expression of property "otherwise taxed" excluded such portions as were not taxable, and that therefore the amount of state bonds (not taxable) held by the corporation could not be deducted from the market value of the stock.

This court held that the said bonds must be deducted. The argument of the court is that though the special exception refers only to property otherwise taxed, yet all statutes in pari materia must be construed together, and as subdivision 10 of section 453 of the Code of 1886 (like subdivision 11 of section 2082 of the Code of 1907) provides that "all capital invested in bonds or currency which are exempt from taxation" shall become liable to taxation when reinvested in taxable property, unless the tax has already been paid on such property, it would result in double taxation to tax the stock, while invested in nontaxable property, and then tax the same when reinvested. The court says: "If a part of the money capital of an individual be invested in state bonds, it will be conceded that such part is not liable to taxation; why, then, should it be held that the portion of the capital of corporations so invested is taxable, in the face of the constitutional mandate, 'the

property of private corporations, associations and individuals of the state shall be forever taxed at the same rate?' * * * Any other construction of the revenue law nullifies the provisions as to the exemptions, discriminates in the matter of taxation, contrary to the letter of the Constitution, and violates the uniformly observed and maintained policy of the state as to the nontaxability of its bonds. * * * When the revenue laws are considered as constituting an entire and complete system of taxation, the legislative intent, that the portion of the capital stock of corporations invested in bonds of the state, should be excepted from the tax, clearly appears, though no precise words of the paragraph levying the tax declare the exception."—*State v. Stonewall Ins. Co.,* 89 Ala. 335, 339, 340, 7 South. 753, 755. While there is no such statute in regard to shares in corporate stock as that referred to in the *Stonewall Case,* providing for taxing the proceeds of the stock when reinvested, yet the reasoning, otherwise, of that case applies to this. Notwithstanding the decisions above referred to, yet the fact remains that the share of stock is but a certificate of the ownership by the holder of that proportion of the property which it represents, and if it is the policy of the state to exempt a cemetery, it is difficult to see why the mere fact that the parties choose to divide it up into shares would change the policy so as to make the shares taxable. The same principle which declares against double taxation would equally condemn a taxation, in one form, of property which is specially exempted in another. A trustee might purchase one half of the cemetery, giving to each cestui que trust a certificate showing his interest, which would be exempt from taxation, and the other half might be purchased by other inviduals who organized a corporation, and, under the principle

20—170

contended for, the shares of stock would be subject to taxation, though their interest was exactly the same as that of the owners of the other half, which would not be taxing "the property of private corporations, associations, and individuals * * * at the same rate." Evidently the Legislature did not intend that any interest in a cemetery should be taxed, and, lest in some way the principle of exemption declared might be evaded, section 2083 provides that the previous decisions "shall not be construed so as to interfere *in any way* with the exemptions from taxation provided by law." (Italics ours.)

We hold, then, that the value of the nontaxable property should be deducted from the market value of the shares of stock. Consequently the court erred in sustaining the demurrer to the second count; and as the third count involved only commissions, it is governed by the same principles.

The judgment of the court is reversed; and a judgment will be here rendered, overruling the demurrers to the complaint.

Reversed and rendered.

DOWDELL, C. J., and ANDERSON, McCLELLAN, and EVANS, JJ., concur.

SAYRE, J. (dissenting).—The Constitution exempts cemeteries from taxation. The statute also exempts cemeteries, but adds that "where cemeteries are owned, held, and lots sold therein for profit, the same shall not be exempt." The Legislature was, of course, without power to ingraft an exception upon the constitution exemption. But what does the Constitution mean? It means to exempt those places where the dead bodies of human beings are buried, including, as I apprehend, places dedicated by their owners to future use for such

purpose and places expropriated under the statute. They are so exempt because they are indispensible and serve a public purpose by conserving the public health. Other provisions of Constitution and statutes, most of them of long standing serve to indicate what was in the minds of the makers of the Constitution. Those statutory provisions which relate to the incorporation of burial societies are of long standing and treat such corporations as not of a business character. Their relation to the offices of religion is recognized in section 3620 of the Code of 1907, which provides that "when such graveyard is wholly under the control of persons belonging to one denomination of faith, the elder, deacon, minister, bishop, or priest, who is the head of such denomination in the city, town, village, or county, shall be ex officio the chairman of such board of trustees; and when such graveyard is under the control of persons of different denominations, such heads of the denominations interested shall be members of the board." The Constitution provides in section 217 that "the property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; provided, this section shall not apply to institutions devoted exclusively to religious, educational, or charitable purposes." The Code gives a limited exemption from taxation to the property of corporations formed bona fide "for other than pecuniary purposes." Five or more citizens may procure the location and expropriation of burial places which thereupon are dedicated to public use. But it appears that the appellant corporation was formed under the general statutes which authorize the formation of corporations "for the purpose of carrying on any lawful business or businesses of any kind or nature whatsoever." Its business is to dispose of a tract of land in lots to individuals

who will devote the parcels respectively to the burial
of their dead. But that portion of the tract as yet un-
disposed of has not become affected by any public use.
It has not been irrevocably dedicated as a place of bur-
ial. It is not in fact a burial place, for none have been
buried there, nor can any be buried there until title
has been acquired on terms to be imposed by the cor-
porate owner. It remains at the free disposal of the
corporation. A plantation does not become a ceme-
tery, and so exempted from taxation, when the owner
sets apart a small part of it for the sepulture of his
family and dependents, or sells a part of it to his neigh-
bor for a like purpose, nor would the owner's declaration
that he intended to convert the entire tract to use as a
cemetery, nor even his bona fide intent so to do, have
that effect unless it be so actually used or its irrevoca-
ble dedication to such be evidenced in some appropri-
ate, sufficient, and conclusive way, putting it beyond
the power and control of the owner. Appellant's case
is not different. It is a business corporation holding
its property for sale for the pecuniary gain of its share-
holders. It may sell to whom and on what terms it
pleases. It does not appear except by vague inference
that it has been done, but if the company had divided
its lands into lots and streets or alleys between them,
and has sold lots by reference to a map showing these
things, this would amount to a dedication of the streets,
but would leave the lots in the hands of the company
unaffected by any use. The company contemplates, no
doubt, the sale of its entire tract to purchasers who
will devote their parcels to use as burial places, and
perhaps its arrangements are such as to render the par-
cels whether sold or to be sold of no practical value
for other purposes, but as yet its property is not a cem-
etery, and is not to be used for the burial of the dead

until it passes into another ownership. The Constitution and so much of the statute as recognizes the constitutional exemption, as well as that part of the statute which purports to establish a form of exception to the exemption, use the identical words "cemeteries," but in the last case the term is qualified by a context which gives the term a meaning in consonance with the Constitution, amounts, indeed, to a correct definition by the Legislature of the term as used in Constitution and statute. I cannot conceive it to have been in the minds of the framers of the Constitution that property held as this is should be relieved of its ratable burden of taxation, and am of the opinion that the Legislature correctly appreciated the meaning of the word "cemeteries" as used in the Constitution.

MAYFIELD, J., concurs.