[Tarrant, Tax Collector, v. Bessemer National Bank.]

# Tarrant, Tax Collector, *v.* Bessemer National Bank.

## *Assumpsit.*

(Decided December 17, 1912.   Rehearing denied January 13, 1913
61 South. 47.)

1. *Banks and Banking; National Banks; Nature.*—National banks
are agents of the general government to aid in the administration
of a branch of the public service, and are constitutionally author-
ized as a proper exercise of the power of Congress, incidental or
implied.

2. *Taxation; National Banks; Capital Stock; Power of State.*—
The revised statutes of the United States, section 5219, not only
furnishes the authority to the state to tax the property or stock
of a national bank, but also prescribes the limitations on the exer-
cise of that power.

3. *Same.*—Subdivision 8, section 2082, Code 1907, does not permit
a deduction from the value of the capital stock of the amounts
invested by the bank in exempt bonds of the state, and when so
construed, the statute is a lawful exercise of the power to tax
national banks, and the shares thereof conferred by section 5219,
Revised Statutes, United States.

4. *Same; Stock; Statutory Provisions.*—Subdivision 8, section
2082, Code 1907, in making the bank liable for the tax assessed on
the stock to the person in whose name the share stands on the
books of the bank, does not impose a tax on the bank, and does
not conflict with the provisions of section 5219, Revised Statutes
United States.

5. *Same; Statutes; Validity.*—The fact that subdivision 9 of sec-
tion 2082, Code 1907, exempts in addition to the taxable real estate,
of corporations other than banks, also the taxable value of the
personal property thereof, does not render subdivision 8 of said
section invalid as authorizing discrimination in the taxation of the
national banks in violation of section 5219, Revised States United
States, since the business of such other corporations does not
necessarily come in competition with the business of banks, and
there is no substantial difference in the result in the application of
either method either to the state, corporation, banks or stockholders.

6. *Same.*—Subdivision 8, section 2082, Code 1907, although con-
strued so as not to allow a deduction of the amount invested by
banks in exempt bonds of the state, does not discriminate in favor
of private individuals owning exempt bonds and competing with
national banks in carrying on a banking business, since the bank
itself obtains the benefit of the exemptions in that its personal
property is not taxable.

. APPEAL from Birmingham City Court.

Heard before Hon. C. C. NÉSMITH.

Action by the Bessemer National Bank against George B. Tarrant, Tax Collector, to recover taxes paid. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint is as follows: "The plaintiff, the Bessemer National Bank, which is a banking association, organized under the laws of the United States, claims .of the defendant, George B. Tarrant, the sum of $260 for that heretofore, to-wit, on the 22d day of December, 1910, taxes amounting to $957.78 were assessed by the tax assessor of Jefferson county against plaintiff on the shares of its capital stock for the year 1910, and the assessed value upon said shares were $73,675; that the aggregate amount or sum at which the whole of such shares were assessed was $83,000; that, in arriving at the assessed value of such shares, the sum of $9,325, being the sum at which the real property of the plaintiff was returned for taxation for the year 1910, was deducted from said sum of $83,000, and plaintiff avers that plaintiff returned for taxation, for the said year of 1910, cetrain real property of the value of $9,325; and that in making a return of this property to the said assessor, to enable him to ascertain the amount at which its shares of stock should be assessed, and on, to-wit, the 22d day of December, 1910, the plaintiff showed and stated to the said assessor that it held $20,000 of the bonds of the state of Alabama, and claimed and insisted that these bonds were not subject to taxation, and that the amount thereof should be deducted from the amount at which said shares should be assessed. And plaintiff avers that, in ascertaining the amount at which said shares should be assessed, there was included by the said assessor the amount of said bonds, to-wit, $20,000, held and

owned by the plaintiff, and no exemption was made in said assessment of said shares of capital stock for and on account of said bonds, and that the said sum at which the said shares of stock were assessed included the said sum of $20,000 of Alabama state bonds, and that no exemption was allowed in assessing said shares for or on account of the said Alabama state bonds, which aggregated the said sum of $20,000. And plaintiff avers that after the said assessment had been made, as aforesaid, and without the allowance of any exemption for or on account of the said bonds, and on, to-wit, the 2d day of February, 1912, plaintiff, under protest and under duress, paid to defendant, who was then and is now tax collector of the said county of Jefferson, in the state of Alabama, the said sum of $1,079, which included $121.22 as taxes on the real estate of plaintiff, assessed as aforesaid, and $957.78 as taxes on the said shares of capital stock of plaintiff; and the defendant refused to allow any exemption on account of said state bonds, and required payment of the whole tax assessed, as aforesaid, by the assessor upon said shares of the capital stock, which said payment of tax was made by the plaintiff under protest and under duress, as aforesaid; and plaintiff then and there gave notice and warning to the said defendant tax collector, as aforesaid, that it would enter suit to recover back the said sum of $260, which was the amount of taxes assessed upon the $20,000 of value, being the amount and value of said bonds, included in the said assessment of said shares by the said assessor, and for which no exemption had been or was allowed, the same being, at all the several times aforesaid, invested in Alabama state bonds, and held and owned by plaintiff at the time of said assessment, and at the time of said payment; and said amount sued for is not in the hands of said defendant."

The demurrers were as follows:

"(1) It appears from said complaint that the value of the shares of plaintiff assesed by defendant was properly assessed.

· "(2) It nowhere appears from said complaint that any tax was assessed against the bonds of the state of Alabama owned by the complainant.

"(3)   It appears that the tax assessed was a tax against the value of the shares of the complainant company.

"(4) The tax assessed against said shares is a tax against their value, and not a tax against the separate elements which in the aggregate make the value of the shares.

"(5) It nowhere appears, from the complaint, that any assessment was made against any exempt property, as such.

"(6) It does not appear from said complaint that plaintiff is assessed with any tax.

"(7) The tax assessed is not a tax against plaintiff, but a tax against the shareholders of plaintiff.

"(8) It does not appear that plaintiff is in any position to complain of the assessment."

R. C. BRICKELL, Attorney General, and THOMAS H. SEAY, Assistant Attorney General, for the State. If the opinion in the case of *Elmwood C. Co. v. Tarrant*, 170 Ala. 459, is applicable to the questions involved here, then the judgment of the court below is correct. The contention is that the appellee is not in a position to complain of the assessment made against the owners of its shares of stock for the reason that there is no assessment against it, and although the corporation is responsible for the tax, ample security is given to the corporation for reimbursement.—Subd. 8, sec. 2082,

[Tarrant, Tax Collector, v. Bessemer National Bank.]

Code 1907. The distinction between shares of stock and the capital stock of a corporation has always been made whenever that question has been presented to the courts. —*McGuire v. Bd. of Rev.*, 71 Ala. 401; *Com. F. I. Co. v. B. of Rev.*, 99 Ala. 1; *Stonewall I. Co. v. The State*, 89 Ala. 335; 151 Ala. 557; 161 U. S. 134; 161 U. S. 149; Judson on Taxation, p. 93. The right of taxation and limitation of power in the state to tax national banks is conferred by section 5219, Rev. St. U. S., and subd. 8, sec. 2082, Code 1907, is not in conflict therewith when properly construed.

CAMPBELL & JOHNSTON, for appellee. The real question is whether or not in assessing the shares of capital stock of a bank for taxation and in ascertaining the value of shares for taxation, the assessor should deduct from the value of the shares assessed as ascertained by him, the value or amount of Alabama state bonds owned by the bank as part of its assets. Alabama state bonds are exempt from taxation, and this exemption is against indirect as well as direct taxation, and the appellee in this case should not have been required to pay taxes for its stockholders upon so much of the value of the shares as is represented by the state bonds owned by the corporation.—*Elmwood C. Co. v. Tarrant*, 54 South. 188; *State v. Stonewall I. Co.*, 89 Ala. 339. Subdivision 8 of section 2082, must be construed in pari materia with the balance of the law applying to taxation.—*State v. Stonewall I. Co., supra.*—Where a corporation or its capital stock is exempt from taxation, the exemption applies in favor of the shareholders.—*State v. Stonewall I. Co., supra;* 95 U. S. 697; 117 U. S. 129; 23 N. J. L. 592. Where the corporation must pay the tax because so required by the statute, and if the corporation on a direct tax would not be required to pay tax on its

state bonds, its shareholders are by indirection, so to speak, required to pay tax on these bonds which are otherwise exempt, contrary to the spirit of the statute. —*Elmwood C. Co. v. Tarrant, supra;* 47 Atl. 100. To give the construction to the statute sought by the state would be to bring it in direct conflict with the provisions of section 5219, U. S. Rev. St., and would give it the effect of taxing corporate property.—*Home S. Bank v. Des Moines,* 205 U. S. 510.

THOMAS, J.—The complaint follows substantially that in *Elmwood Cem. Co. v. Tarrant,* 170 Ala. 459, 54 South. 186. It states the facts, and the reporter will set it out, together with the demurrers thereto. The overruling of the latter is the only ground of error assigned. They raise, as conceded by both sides in brief, substantially but two questions, only one of which, in the view we take of the case, is necessary to be decided. This involves a construction of our revenue laws.

It will be observed that the appellee, plaintiff below, is a banking corporation organized under and chartered by the laws of the United States. The question here considered is whether or not that portion of its capital stock, which is invested in exempt bonds of the state of Alabama, should, in the assessment for taxation of its shares of stock against the respective shareholders under section 2082, subd. 8, of the Code, be deducted from the total value of those shares first, before assessing such shares for taxation, so that the assessment would be on the value of those shares, as reduced by such deduction. The tax assessor and collector declined to permit the reduction, but assessed and collected, under protest from the bank, who, under the statute cited above, is required to pay it for the shareholders, the tax upon the value of the shares, unreduced, as that value was,

by any deduction for the value of the said exempt state
bonds. Hence this suit by the bank to recover back so
much of the tax as they contend should have been taken
off on account of the value of such exempt state bonds,
held and owned by the bank as such, and not by the
shareholders.

Said subdivision 8 of said section 2082 of the Code of
Alabama, under which the assessment was made and by
which it is to be justified, if at all, thus provides:
"Every share of any incorporated bank of this state,
etc., or of the United States, shall be assessed and col-
lected in the city, town or village where such bank is
located, and such share shall be assessed at its actual
market value to the person in whose name such share
stands on the books of the bank, and not to the bank
or corporation. The president or cashier  *   *   *  shall
make out and return under oath to the assessor  *   *   *
a list showing the total number of shares of the capital
stock of such bank, the full name and residence of every
shareholder as far as known, the actual market value of
such shares, the par value, thereof, etc.,  *   *   *  and
the value of the shares as shown by the books of the
corporation, etc.; and such president or cashier shall,
at the same time, return to the assessor  *   *   *  a
sworn statement of all real estate owned by the bank
situated in this state and the value thereof as assessed
for taxation the same year, and thereupon the assessor
shall, after passing on such assessment, deduct from
the amount or sum, at which the whole of the shares are
assessed, the amount or sum at which the real estate of
the bank situated in this state is assessed for taxation;
and the residue of values remaining after such deduc-
tion shall be the assessed value of the whole of such
shares, and such residue, divided by the whole number
of shares, shall constitute the value of each share for

taxation; and the bank shall pay for the shareholder the tax assessed against such shares, and no other deduction shall be made from the value of such shares except the value of the real estate of the bank situated in this state as assessed for taxation the same year. And all tax assessors, courts of county commissioners, etc., and all other courts are prohibited from making any deduction from the value of such shares, except such assessed value of the real estate owned by such bank. It is the intent and meaning of this subdivision that the real estate of every such bank shall be assessed for taxation against the bank as other real estate in this state is assessed to the owners thereof, and that the bank shall pay the taxes thereon, and that the shares shall be assessed for taxation against the shareholders at their actual market value after deducting therefrom the assessed value of the real estate of the bank, and that the bank shall pay for the shareholders respectively the tax so assessed against their shares. * * * It shall be no ground of objection, however, to such assessment of shares that it is entered on the assessment book in the name of the bank." This subdivision of said section, it will be observed, applies to the assessment of all bank shares, whether the bank be a national bank, as this is, or only a state bank or banking association, and furnishes the only direction found in the statutes of this state as to how and in what way the assessment of such shares shall be made. This subdivision is clear and unambiguous, and expressly forbids, in terms, that "he who runs may read and understand" the deduction of any of the assets of the bank—whatever be their class or character, whether exempt or not exempt—from the value of the shares to be assessed against the stockholder, except the real estate owned by such banks.

The appellee bank, however, contends that the section is to be read in connection with other sections of the Revenue Code in pari materia, and that unless so read, the appellee will be deprived of, and denied exemption from, taxation of its state bonds specifically exempted by section 2061 of the Code. We do not think this position well taken. A brief survey of the law, as construed by the United States Supreme Court, bearing on the power of the state to tax the property of national banks, and the distinction drawn by that court between the property of the bank and the property of the shareholder, will, we think, demonstrate clearly that the Legislature of this state specifically intended, in the passage of said section 2082, subd. 8, to make it the sole guide for determining what property of the bank was to be taken off of the value of its shares before they were assessed against the shareholders; and that they intended, as in the section practically expressed, that no personal property whatever—not even exempt bonds, whether state or national—should be taken off; and that this was a proper exercise of the legislative power; and that such an exercise of it does not deprive the bank of its exemption from taxation of the bonds, either state or national, held by it, but saves the exemption in that no personal property whatever of the bank is taxed at all by that section or in the other laws of this state.

National banks are instruments or agents of the general government, designed to aid in the administration of an important branch of the public service; and they are appropriate means to that end, constitutionally authorized, as a proper exercise of the incidental or implied powers of Congress.—*Farmers' Nat. Bank v. Dearing*, 91 U. S. 29, 23 L. Ed. 196.

The power of the state to tax their property or their shares is derived from the legislative permission of

Congress.—*McGuire v. Board of Rev.,* 71 Ala. 413; *People v. Weaver,* 100 U. S. 539, 25 L. Ed. 705; *Farmer's Nat. Bank v. Dearing, supra.* And necessarily so, for "the power to tax involves the power to destroy"; and therefore, if Congress could not prevent or restrain the state from or in the exercise of such a power, the state by its exercise could so discriminate as to drive national banks out of existence, and thereby defeat and render useless the power existing in Congress to create them.— *McCullough v. Maryland,* 4 Wheat. 436, 4 L. Ed. 579. Congress, however, has granted to the state the power to tax the shares and real estate of such institutions; but in the act which confers the power is found also the limitations upon its exercise.—Section 5219 of Revised Statutes of U. S. (U. S. Comp. St. 1901, p. 3502; *People v. Weaver,* 100 U. S. 539, 25 L. Ed. 705.

Said section 5219 of the Revised Statutes of the United States, just cited as the authority of the state to tax, thus reads: "Nothing herein [referring to preceding sections] shall prevent all the shares of national banks from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by the authority of the state within which the bank is located; but the Legislature in each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any such bank owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real estate of such banks from either state, county, or municipal taxes, to the

same extent, according to its value, as other real property is taxed." This section alone furnishes the measure of the power of a state to tax national banks, their property, or their shares. By its unambiguous provisions, the power is confined to a taxation of the shares of its stock in the names of and against the shareholders, and to an assessment of the real estate in the name of and against the bank itself.—*Owensboro Nat. Bank v. Owensboro,* 173 U. S. 664, 19 Sup. St. 537, 43 L. Ed. 850; *Albuquerque First Nat. Bank v. Albright,* 208 U. S. 548, 28 Sup. Ct. 349, 52 L. Ed. 614. The necessary effect is to forbid and prevent, of course, the state from assessing or taxing at all any of the personal property of such institutions.—*Rosenblatt v. Johnston,* 104 U. S. 462, L. Ed. 832. And the state does not attempt to do so.

Code of Alabama, § 2082, subd. 8, hereinbefore set out, as will appear from only a casual reading of it, taxes only the real estate of the bank, and does not tax at all its personal property. If it does not tax any of its personal property, then it certainly does not tax any of the exempt bonds held by it; and appellee's contention is without merit. It is true that the section taxes the shares of stock in the bank; but it does so upon an assessment against the shareholder, and on the theory that these shares are not the property of the bank, but the property of the shareholders, respectively, as individuals. In the assessment of these shares against the shareholders, they are by the state statute allowed a deduction for the real estate assessed against the bank; but this is a matter of legislative grace, and not a right that they could demand under the federal statute hereinbefore quoted. This federal statute has received very careful consideration by the Supreme Court of the United States, wherein they have clearly pointed out that a tax against a shareholder on his shares in a bank is not a tax on the personal prop-

erty of the bank, and that therefore the state has the power, under said federal statute, to tax such shares against the shareholder, without allowing any deduction from their value on account of exempt United States bonds owned by the bank.

In *Van Allen v. Assessors,* 3 Wall. 581, 18 L. Ed. 229, that court says: "The main and important question involved, and the one which has been argued at great length and with eminent ability, is whether the state possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, when the whole capital of the banks is invested in exempt stock and bonds of the United States. The court are of opinion that this power is possessed by the state, and that it is due  *  *  *  to the public interest involved that the question should be finally disposed of. We shall proceed, therefore, to state, as briefly as practicable, the grounds and reasons which have led to this judgment.  *  *  *  The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. This is familiar law, and can be found in every work that may be opened on the subject of corporations.  *  *  *  The individual members of the corporation are no doubt interested in one sense in the property of the corporation, as they may derive individual benefits from its increase, or loss from its decrease; but in no legal sense are the individual members the owners of the corporate property. The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of

its charter, in proportion to the number of his shares, and, upon its dissolution or termination, to his proportion of the property of the corporation that may remain after the payment of its debts. This is a distinct independent interest or property, held by the shareholder, like any other property that may belong to him. Now, it is this interest which the act of Congress [hereinbefore set out] has left, subject to taxation by the states under the limitations therein prescribed." This case has been repeatedly cited and ever since followed by the same court.—*People v. Tax,* 4 Wall. 244; 18 L. Ed. 344; *Bradley v. People,* 4 Wall. 459, 18 L. Ed. 433; *Cleveland Trust Co. v. Lander,* 184 U. S. 113, 22 Sup. Ct. 394, 46 L. Ed. 456; *Mercantile Bank v. New York,* 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; *Hager v. Am. Nat. Bank,* 159 Fed. 396, 86 C. C. A. 334; and cases cited in note of volume 18, p. 236, of Lawyers' Ed. of U. S. Sup. Ct. Reps.

The Supreme Court of this state, in an able opinion by Judge STONE, have also recognized and approved of the property difference here pointed out between the capital stock of the bank and the shares therein owned by the stockholders.—*Maguire v. Board of Rev.,* 71 Ala. 401, and cases there cited. It was in the light of the federal statute quoted, the construction thereof as given it by the Supreme Court of the United States, hereinbefore noted, and the decision of our own court above cited, that the Legislature of this state set about the task of taxing national banks and the shares therein. From them all they reasoned, and correctly so: "We can tax the real estate of national banks, but not their personal property, because the congressional act forbids. We can tax both the real and personal property of state banks, for they are our own creations, though, if we tax their personal property, it will increase the tax burdens

of the state banks beyond that of the national banks, whose personal property we are not permitted to tax, and the latter, by reason of the advantage, will drive the former out of existence. This we do not want, and therefore we will tax only the real estate of each, and exempt all of the personal property of each from taxation, which, of course, includes all national and state bonds owned by them and already specifically exempt. We can, under the said act of Congress, tax the shares in national banks against the shareholders, without allowing any deduction whatever from their value on account of either real or personal property owned by the banks; but in order not to discriminate, and thereby offend the congressional inhibition, we will put the shareholders in state banks on exactly the same footing. We would like, too, to deal as fairly with the shareholders in each class of banks as we reasonably can, consistent with the end of raising proper revenue for the state; and, since the bank itself, in which is invested the shareholder's money represented by his shares, pays taxes on its real estate, we will allow the value of it to be taken off the shares first, before assessing them for taxation against the shareholder; but we will not allow the value of any of the personal property of the bank to be so taken off of the value of the shares before assessing them, for the simple reason that the bank pays no tax whatever on any of its personal property."

These evident conclusions of the Legislature were expressed in section 2082, subd. 8, of the Code, which we have hereinbefore set out; and for fear, it seems, that the tax officers and courts might possibly misunderstand and undertake to allow shareholders deduction on account of other property owned by the bank other than its real estate, as here insisted on, they put this express prohibition in said subdivision 8 of said section 2082:

"And all tax assessors, courts of county commissioners, boards of revenue, and all other courts, are prohibited from making any deductions from the value of such shares, except such assessed value of the real estate owned by such banks." This section, as we have seen, is a lawful exercise of the legislative power, and expressly forbids our looking beyond its four corners. We would be clearly overriding the legislative will, and would fail to effectuate the legislative intent were we to do so. Were we to adopt such a construction of the subdivision as is here contended for by the appellee bank, and thereby permit the value of exempt state bonds to be deducted from the value of bank shares before assessing the latter against the shareholder, then, by every rule of logic, we would be forced to permit United States bonds to be also deducted, for United States bonds are not only exempted from taxes by federal statutes (U. S. Rev. Stat. § 3701 [U. S. Comp. St. 1901, p. 2480]), but are also exempted by Alabama statutes, and that by the very self-same statute that exempts state bonds.—Code, § 2061. The result would be that the revenue that the state would derive from taxing shares in banks would be small indeed, for it is common knowledge that a very large part of the securities held by the banks, especially national banks, are United States and state bonds.

A further result would be that the shareholder in a national bank would have an advantage, in point of taxation, over a shareholder in state banks, for the reason that United States bonds are profitable to, and largely held by, national banks mainly in that they can issue on them bank notes to the amount of their face value, whereas they are not profitable or inviting as an investment for state banks, who are deprived of this privilege; and hence very few are held by the latter. The owner of shares in a national bank would, therefore, neces-

sarily always get a larger reduction from his taxes than the owner of shares in a state bank, whereas the policy of the law is to put each on the same footing, as nearly as practicable. To this end, and to the end of securing adequate revenue for the state, the Legislature has denied the shareholders the grace of permitting any personal property of the bank (all of which, we have seen, is exempt from taxation) from being deducted from the value of the shares assessed against the shareholder. If such were permitted, it would clearly be double exemption, so far as state or national bonds owned by the banks are concerned; exempted in the first instance to the bank, along with all its other personal property, and then exempted again by allowing the shareholders a reduction to the amount of their value on the shares assessed against such shareholders.

The section (2082, subd. 8, of the State Code), in that it makes the bank liable for the tax so assessed against the shareholders on such shares, and requires the bank to pay it for the shareholders, is construed not to be a tax on the bank, and therefore not violative of the said act of Congress.—U. S. Rev. Stat. § 5219; *Aberdeen First Nat. Bank v. Chehalis County,* 166 U. S. 440, 17 Sup. St. 629, 41 L. Ed. 1069.

All other classes of domestic corporations in this state are assessed differently from banks. See subdivision 9 of said section 2082 of the Code. This does not offend the law of Congress (U. S. Rev. Stat. § 5219) inhibiting discriminations in the taxation of national banks, because the business of such corporations does not come in competition with that of banks.—*Talbott v. Silver Bow County,* 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210, and numerous authorities cited on page 157 et seq. of volume 5 of Edward Thompson Company's Annotated Federal Statutes.

The state, not hedged about by congressional limitations, assesses, for taxation, both the real and personal property of all corporations other than banks—that is, such of each kind of such property as is not exempt by law—and assesses the shares in such corporations against the shareholders, but allows the latter a deduction from the value of their shares of the amount of the taxable real and personal property owned by, and that has been assessed against, the corporation.—Code, § 2082, subd. 9. Thus it is seen that the shareholders in such corporations get a deduction from the value of their shares of not only the value of the taxable real estate of the corporation, but also of the value of the taxable personal property of the corporation, whereas shareholders in a bank get a reduction for only the value of the taxable real estate owned by the bank. This is because the law taxes the taxable personal property of other corporations, and does not tax at all the taxable personal property of banks. Hence, although there is a difference in the method of assessment against banks and other corporations and their respective shareholders, unavoidable on account of the act of Congress cited, yet there is no real or substantial difference in result either to the state, the corporation, bank, or shareholder.

Under said subdivision 9, § 2082, the corporations therein assessed, which are all other domestic corporations than banks, are not required to pay taxes on any of their exempt property, whether real or personal, but only on their taxable property; hence they therein also clearly get the benefit of all state laws exempting state bonds or other property from taxation; and to allow the shareholder, in assessing his shares for taxation, deduction for the value of such property exempted to the corporation would be to allow its exemption twice,

once to the corporation, and again to the shareholders. Realizing this, the Legislature in said subdivision denied, in express terms, the shareholders (except, for special reasons, shareholders in fire insurance companies) the right to have deducted, from the value of the shares assessed against them, the value of any property owned by the corporation, except its taxable property. This statute entirely changes the law, as it was in subdivision 9 of section 453 of the Code of 1886, as construed by Judge CLOPTON in *State v. Stonewall Fire Ins. Co.,* 89 Ala. 335, 7 South. 753, and with the evident design to prevent the allowance to shareholders, on assessment of the shares against them, of deduction from their value for the value of exempt property owned by the corporation and exempted to it. This design was properly and successfully accomplished.—*State v. Stonewall Fire Ins. Co.,* 89 Ala. 335, 7 South. 753; *Maguire v. Board of Rev.,* 71 Ala. 401; *Van Allen v. Assessors,* 4 Wall. 581, 18 L. Ed. 229. The statute (said section 453, subd. 9, of the Code of 1886), dealt with and construed in the said case of *State v. Stonewall Fire Ins. Co., supra,* levied a tax on the capital stock of corporations, whereas the present statute (Code, § 2082, subd. 9) does not do so; hence there is a wide difference between them, recognized by all the authorities cited, and that case (*State v. Stonewall Fire Ins. Co., supra*) does not conflict at all with the conclusion we reach.

The *Elmwood Cemetery Co. Case,* 170 Ala. 459, 54 South. 186, upon which appellee bank relies, was a decision upon a different subdivision of the Code, § 2082, subd. 9, than that we have here under consideration, which is subdivision 8 of section 2082, and which differs from the other in material respects; hence we do not regard that case as an authority here. The conclu-

[Tarrant, Tax Collector, v. Bessemer National Bank.]

sion we reach here is sustained by the words of the statute itself, in the light of the following cases: *Van Allen v. Assessors,* 4 Wall, supra; *Maguire v. Board of Rev.,* 71 Ala. supra; and even by *State v. Stonewall Fire Ins. Co.,* 89 Ala., supra.

Counsel for appellee bank argues that, unless the state statute (Code, § 2082, subd: 8) be so construed as to allow the contention of appellee bank, then the whole statute must fall (as contravening the congressional act cited), in that it amounts to a discrimination against shareholders in national banks in favor of private individuals, not incorporated, who own exempt bonds and compete with national banks in carrying on a banking business. It is a complete answer to this, we think, to repeat, what we have hereinbefore endeavored to point out, that the bank itself, who owns the bonds gets the benefit of the exemption in that its personal property is not taxed at all; and incidentally, of course, the shareholders get the benefit in proportion to the shares they own in the bank—the same benefit that the same number of private individuals would get if they owned the bonds jointly. The only difference is that in the one case the bank is relieved of the tax resulting in benefit to the shareholders who own its stock, whereas in the other case the individuals are directly relieved, but not as a credit on their shares, for they have none.

The judgment of the lower court is reversed, and the cause is remanded for entry of the proper judgment in the lower court sustaining the demurrers.

Reversed and remanded.